UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 SEP 24 P 12: 08

U.S. DISTRICT COURT
DISTRICT OF MASS.

FREDERICK BABCOCK, JOSEPH CANNEY, )
THOMAS GREGORIO, JOHN KELLEY and )
YVONNE KELLEY, )
)
Plaintiffs, )
)
v. )  C.A. No. 04-CV-11413-EFH
)
UNITED STATES OF AMERICA, )
NORTHEASTERN UNIVERSITY )
SASAKI ASSOCIATES, INC. and LEDGEWOOD )
CONSTRUCTION COMPANY, INC., )
)
Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT NORTHEASTERN UNIVERSITY'S MOTION TO DISMISS**

**I.   PRELIMINARY STATEMENT**

On January 8, 2002, the President of the United States, together with United States Senators Kennedy and Kerry and U.S. Department of Education Secretary Paige, among others, visited Boston Latin School ("Boston Latin"), the oldest public school in the country. The purpose of the visit was to celebrate and explain new federal education reform legislation, "The No Child Left Behind Act of 2001," which the President had signed into law earlier that day.

In connection with and support of the Presidential visit to Boston Latin, the United States Navy had obtained permission from Northeastern University ("Northeastern") to use its athletic fields as a landing site for Marine One, the Presidential helicopter. On January 5, 2002, the Navy conducted a practice landing on Northeastern's Parsons Field. It is that activity that now forms the basis of the plaintiffs' multiple claims against Northeastern, each sounding in negligence.

As we show, <u>infra</u>, the clearly educational and recreational use of Northeastern's property that day entitles Northeastern to the protection of the statutory immunity set forth in M.G.L. c. 21, § 17C and mandates dismissal of all negligence claims against Northeastern as a matter of law.

## II. BACKGROUND

Northeastern is a charitable corporation engaged in the business of higher education located in Boston, Massachusetts. Complaint ¶ 8. Northeastern owns Parsons Field. Complaint ¶ 20. Parsons Field contains a baseball diamond with dugout buildings on the field. Complaint ¶ 19.

President George W. Bush was scheduled to visit Massachusetts on January 8, 2002. Complaint ¶ 18. The purpose of the trip was to visit to a local elementary school in connection with the President's educational program, "No Child Left Behind," federal education legislation. On January 5, 2002, in preparation for the President's visit, several Presidential helicopters were scheduled to conduct test landings at Parsons Field. Complaint ¶ 17. Members of the Town of Brookline Fire Department, including the plaintiffs, Frederick Babcock, Joseph Canney, Thomas Gregorio and John Kelley were present at Parsons Field for the test landings on January 5, 2002, presumably on official business in the event of an emergency. Complaint ¶ 19. During the test landing mission drill, firefighters Babcock, Canney, Gregorio and Kelley were in place near one of the dugout buildings (the "Dugout") on the baseball field. Complaint ¶ 19. As one of the helicopters neared the ground, its rotor backwash blew the Dugout from its foundation. See Complaint ¶ 21. The firefighters allegedly suffered injuries as a result of the swirling debris and the toppling of the Dugout. Complaint ¶¶ 21-26 and 30.

As a matter of law, Northeastern is immune from liability for negligence which allegedly caused the firefighters' injuries, however, because it permitted Parsons Field to be used for educational and recreational purposes in preparation for a scheduled visit by the President of the United States three days later, and the firefighters sustained their alleged injuries during the

course of such use. Therefore, the counts asserted against Northeastern should be dismissed because they fail to state a claim on which relief may be granted.

On June 22, 2004 plaintiffs filed a thirty-five count Complaint naming as defendants, the United States of America, the Department of the Navy, Northeastern University, Sasaki Associates, Inc. and Ledgewood Construction Company, Inc.[1] Counts III, X, XVII, and XXIV assert negligence claims against Northeastern, and Count XXXI is a claim against Northeastern for loss of consortium arising from the alleged negligence.

As to Northeastern, the Complaint alleges only that the plaintiffs' injuries and/or loss of consortium were "caused entirely or in part by Northeastern University's negligence and carelessness in failing to maintain its property, Parsons Field, in a reasonably safe condition and its failure to properly inspect, repair and reasonably warn of the dangerous conditions that existed therein." Complaint ¶¶ 34, 41, 48, 55, and 62.

Pursuant to M.G.L. c. 21, § 17C, Northeastern University is immune from liability for negligence. Plaintiffs were injured on January 5, 2002 while the United States government was using Parsons Field for educational/recreational purposes in the public interest for the convenience, safety and protection of the President of the United States of America. Under the provisions of M.G.L. c. 21, § 17C, Northeastern cannot be held liable for ordinary negligence, but only for willful, wanton, or reckless conduct. Plaintiffs' Complaint is devoid of any claim of willful, wanton or reckless conduct on the part of Northeastern. Accordingly, the plaintiffs have failed to state a cause of action against Northeastern and the Counts asserted against Northeastern should be dismissed as a matter of law.

---

[1] On September 14, 2004 the Court approved plaintiffs' Stipulation Of Dismissal Of Sasaki Associates, Inc. without prejudice.

### III. LEGAL ARGUMENT

#### A. Standard of Review.

A cause of action should be dismissed if it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court accepts as true the well-pleaded factual allegations of the complaint, and construes these facts in the light most favorable to the plaintiffs. E.g. Chongris v. Board of Appeals of the Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987)(citations omitted). The court does not consider "those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets'" in considering a motion to dismiss. Id. (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate "if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citation omitted).

#### B. Analysis.

The negligence claims against Northeastern should be dismissed because it is immune from negligence liability as a matter of law and was not engaged in willful, wanton, or reckless conduct.

##### 1. Northeastern is Immune from Negligence Liability because the Plaintiffs were Injured while Parsons Field was in Educational and/or Recreational Use by the United States Government as Permitted by the Landowner, Northeastern.

M.G.L. c. 21, § 17C, the recreational use statute, "exempts an owner of land who permits the public to use the land for recreational purposes [and educational purposes] without charge from negligence-based liability to persons injured while using the land for those purposes." Catanzarite v. City of Springfield, 32 Mass.App.Ct. 967, 967 (2002). The statute applies to government entities and private landowners. See Seich v. Town of Canton, 426 Mass. 84, 85, FN.2 (1997). Prior to passage of the statute, the Massachusetts legislature concluded that the public need for more land for recreational uses would not be met unless private landowners

4

would agree to open their land for recreational use by the public, in addition to State and local governments acquiring more land. See Ali v. City of Boston, 441 Mass. 233, 236 (2004). Private landowners were hesitant about permitting their land for public use because of the fear of liability resulting for injuries sustained by members of the public while using the land. Id. As a result, the Massachusetts legislature passed the recreational use statute, seeking to balance the need for public access to land while protecting landowners from liability for injuries sustained by the public in using the land. Id.

> M.G.L. c. 21, § 17C states, in relevant part:
>> Any person having an interest in land including the structures, buildings, and equipment attached to the land…who lawfully permits the public to use such land for recreational, conservation, scientific, <u>educational</u>, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor…shall not be liable for personal injuries or property damage sustained by such members of the public, including without limitation a minor, while on said land in the absence of willful, wanton, or reckless conduct by such person. Such permission shall not confer upon any member of the public using said land, including without limitation a minor, the status of an invitee or licensee to whom any duty would be owed by said person.[2]

M.G.L. c. 21, § 17C (West 2004) (emphasis supplied).

For purposes of landowner liability, the statute created a unique category of entrants onto the land. Ali, 441 Mass. at 236-37. Recreational and educational users permitted to use another's land who are considered "lawful visitors" under the common law for purposes of landowner liability, constitute a subcategory of "lawful visitors" pursuant to the statute because they are owed a different standard of care by a landowner than a landowner must provide "lawful visitors" under the common law. Id. Under the statute, members of the public who use land for non-profit purposes such as recreation and/or education are owed the standard of care applicable to trespassers, rather than the reasonableness standard of care applicable to lawful visitors. Id.

---

[2] Clearly a Presidential visit to Boston Latin in connection with education reform legislation serves an "educational" purpose squarely within the statute's purview.

5

The statute limits the liability of landowners who open their land to the public for recreational and educational "by precluding [those who make recreational or educational use of the land] from making claims for injuries in the absence of 'willful, wanton or reckless conduct' by the landowner." Id. Under the statute, therefore, a landowner is not liable to a member of the public using the land for recreational and/or educational purposes for negligent conduct. See M.G.L. c. 21, § 17C.

Massachusetts courts apply an objective standard to determine if an injured party is engaged in recreational and/or educational activity which would give rise to immunity for simple negligence and result in limited liability of the landowner under the recreational use statute. See Ali, 441 Mass. at 238. The subjective purpose of the member of the public who was injured while using the land is not determinative of the applicability of the statute. See id. For example, an individual injured while using the owner's land for work purposes does not render the statute inapplicable if the activity engaged in was a recreational or educational activity permitted by the landowner. See id. When it comes to immunity of a landowner under Section 17C, the underlying purpose of the plaintiff in using the land does not matter; "[w]hat matters is that [the plaintiffs] are engaging in recreational pursuits permitted" on the land. Id. Any other interpretation "would undermine the very purpose of the statute: to encourage landowners to permit broad, public, free use of land for recreational purposes" while limiting landowner liability for injuries sustained while engaging in such use. Id.

Northeastern is a "person having an interest in the land" because it owns, maintains, and controls Parsons Field. See Complaint ¶ 20. Northeastern allows members of the public to use Parsons Field for recreational and educational uses without charging them a fee. Residents of the Town of Brookline use Parsons Field for football and baseball. Northeastern University students also use Parsons Field as part of their educational experience at Northeastern. Indeed, the sole purposes of the field which is a combined football and baseball facility are recreation and education.

Consistent with the usual and customary uses of Parsons Field, Northeastern permitted the public to use Parsons Field for recreational and educational purposes on January 5, 2002. Northeastern permitted the Navy, a subdivision of the United States government and a representative of the public, to use Parsons Field to conduct a mission involving test helicopter landings at Parsons Field. See Complaint ¶¶ 6, 7, 17 and 18. On that date, Parsons Field was being used for the test landing of U.S. Government helicopters in connection with an upcoming Presidential visit. Complaint ¶¶ 17 and 18. Furthermore, the test landing of the Presidential helicopters was conducted in connection with President George W. Bush's visit to a public school to discuss "No Child Left Behind," a Federal education reform bill and enacted into law by Congress. Northeastern did not charge a fee or otherwise receive any benefit by granting use of the field to the government. Rather, Northeastern permitted the helicopters to land at Parsons Field because such use was consistent with the land's customary recreational and educational uses by members of public. Accordingly, Northeastern is immune for negligence liability pursuant to M.G.L. c. 21, § 17C.

### 2. Northeastern is Immune from Negligence Liability and Plaintiffs Do Not Allege That Its Conduct was Willful, Wanton or Reckless.

Plaintiffs' Complaint does not allege that Northeastern's conduct was willful, wanton or reckless. As previously discussed, a person having an interest in land who permits public use of the land for recreational purposes is not liable for injuries sustained by members of the public in the absence of willful, wanton, or reckless conduct. See M.G.L. c. 21, § 17C. "Willful, wanton, or reckless conduct 'involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another.'" Ali, 441 Mass. at 238-39 (citation omitted). "'The risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it.'" Id. at 239 (citation omitted). "Reckless conduct involves risk so pronounced that 'compared to negligence, there is not just a

difference in degree but also a difference in kind.'" Whooley v. Commonwealth, 57 Mass.App.Ct. 909, 911 (2003) (citing Sandler v. Commonwealth, 419 Mass. 334, 337 (1995)).

Plaintiffs do not claim that Northeastern intentionally or unreasonably disregarded a risk that created a high probability of substantial harm to the plaintiffs. The plaintiffs claim that a renovation project on Parsons Field took place on or around 2001, and the project "included removal and disposal of structures on and/or around Parsons Field, including the Dugout." Complaint ¶ 27. The plaintiffs further allege in their Complaint that "the Dugout had not been removed, or had been removed from its original location and repositioned on Parsons Field, and was in an unsafe condition." Complaint ¶ 29. The plaintiffs plead no other facts regarding the conduct of Northeastern with regard to the use and/or maintenance of Parsons Field or the Dugout. Rather, the Complaint makes naked, legal conclusions that Northeastern negligently and carelessly failed to maintain its property in a reasonably safe condition. See Complaint ¶¶ 34, 41, 48, 55, and 62. There is no claim that Northeastern knew of or disregarded an alleged high degree of risk that the force of the rotor backwash of the helicopter would be strong enough to cause the Dugout to topple over. There is no factual basis to conclude that Northeastern engaged in conduct that involved an intentional or knowing disregard of a risk that presented a high probability of substantial harm, such as death or severe bodily injury, to the plaintiffs or to any other member of the public utilizing Parsons Field. Northeastern is therefore immune from liability pursuant to the recreational use statute because it was not willful, wanton, or reckless.

## IV.   CONCLUSION

The plaintiffs' claims against Northeastern should be dismissed as a matter of law. Viewing the facts alleged in the Complaint in the light most favorable to the plaintiffs, the plaintiffs fail to state a claim upon which relief may be granted. Northeastern, as the owner of Parsons Field, permitted the land to be used by the public - the United States of America - for educational and recreational purposes. It did so at the request of the government for the

8

convenience, safety and security of the President of the United States while visiting Boston for a clear educational purpose. Pursuant to M.G.L. c. 21, § 17C, Northeastern is exempt from liability for negligence in this matter.

Respectfully submitted,
NORTHEASTERN UNIVERSITY,

By its attorneys,
NELSON KINDER MOSSEAU & SATURLEY, P.C.

Dated: 9/24/04

By: _____
Gerald F. Lucey, BBO # 306860
Robert B. Smith, BBO # 546580
Nelson Kinder Mosseau & Saturley, P.C.
45 Milk Street, 7th Floor
Boston, MA  02109
(617) 778-7500

## CERTIFICATE OF SERVICE

I, Robert B. Smith, do hereby certify that on this date I served the foregoing **"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NORTHEASTERN UNIVERSITY'S MOTION TO DISMISS"** upon all parties of record to this action by faxing a copy and mailing same first-class, postage prepaid to each of the following:

Michael E. Mone, Esq.
Kathryn E. Hand, Esq.
Esdaile, Barrett & Esdaile
75 Federal Street
Boston, MA 02110-1904

Matthew A. Connelly
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271

Jon S. Hartmere, Esq.
Law Office of Jacqueline Allen
262 Washington Street, Suite 601
Boston, MA 02108

DATED: 9/24/04

Robert B. Smith

10