Law Offices of
# JEFFREY A. GORLICK

One Longfellow Place, Suite 3409
Boston, Massachusetts 02114

(617) 314-6953 **Tel**                              jgorlick224@aol.com
(617) 851-1838 **Cell**
(617) 723-7235 **Fax**


September 28, 2006


Clerk, Civil Business
U.S. District Court
Untied States Courthouse
1 Courthouse Way
Boston, MA  02210

Re:    Sandra Babcock v. United States of America, et. als. v. PEDA, Inc.
       C.A. No. 04-12647-EFH
       and
       Frederick Babcock, et. als. v. United States of America, et. als.
       C.A. No. 04-CV-11413-EFH

Dear Sir or Madam:

   Enclosed for filing, please find the following:

   1.    Plaintiff's Motion to Amend Complaint and to Add Cross-Claims; and

   2.    Plaintiff's Second Amended Complaint.

   Please present these documents to the Court for a ruling.

   Thank you for your attention to this matter.

                                      Very truly yours,


                                      Jeffrey A. Gorlick

JAG/lmb

Enclosures

Clerk, Civil Business
U.S. District Court                        - 2 -                        September 26, 2006

cc:    David J. Hatem, Esquire            Gerald F. Lucey, Esquire
      Deborah S. Russo, Esquire        Nelson, Kinder, Mosseau & Saturley, P.C.
      Donovan Hatem LLP                5th Floor, 45 Milk Street
      Two Seaport Lane                 Boston, MA  02109
      Boston, MA  02210

                                        Matthew Connelly, Esquire
      Christopher P. Maffucci, Esquire    US Department of Justice
      Casner & Edwards, LLP           Torts Branch, Civil Division
      303 Congress Street             P.O. Box 14271
      Boston, MA  02210               Washington, DC  20044-4271

      Joslin Ham Murphy, Esquire       Kathryn E. Hand, Esquire
      Town of Brookline               Esdaile, Barrett & Esdaile
      Town Hall                     75 Federal Street
      333 Washington Street          Boston, MA  02110-1904
      Brookline, MA  02445

      John H. Bruno, Esquire          Brian C. Newberry, Esquire
      Masi & Bruno                  Donovan Hatem LLP
      124 Long Pond Road          Two Seaport Lane
      Plymouth, MA  02360         Boston, MA  02210

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SANDRA BABCOCK,<br>     Plaintiff | ) ) ) | |
| v. | ) ) | C.A. NO. 04CV12647EHF |
| UNITED STATES OF AMERICA,<br>NORTHEASTERN UNIVERSITY,<br>LEDGEWOOD CONSTRUCTION COMPANY,<br>INC., AND SPLIT BOULDER<br>CONSTRUCTION, INC.,<br>     Defendants | ) ) ) ) ) ) ) | *consolidated with*<br><br>C.A. NO. 04CV11413-EFH |

| | | |
|---|---|---|
| NORTHEASTERN UNIVERSITY,<br>     Defendant/Third-Party Plaintiff | ) ) ) | |
| v. | ) ) | *and* |
| PEDA, INC.,<br>     Third-Party Defendant/Defendant-in-<br>     Cross-Claim | ) ) ) ) | C.N. NO. 04CV12003-EFH |

| | |
|---|---|
| SPLIT BOULDER CONSTRUCTION, INC.,<br>     Defendant/Third-Party Plaintiff | ) ) ) |
| v. | ) ) ) |
| SASAKI ASSOCIATES, INC.,<br>     Third-Party Defendant/Defendant-in-<br>     Cross-Claim | ) ) ) |

## PLAINTIFF'S MOTION TO AMEND COMPLAINT AND TO ADD CROSS-CLAIMS

Now comes the Plaintiff, Sandra Babcock, ("Plaintiff") and, pursuant to Fed. R. Civ. P.

13(g) and 15(a), moves to amend further her most recent Amended Complaint And Demand For

Jury Trial, filed May 11, 2005, and docketed as entry 58, in order to add cross-claims against

Third-Party Defendant, Sasaki Associates, Inc.  The Plaintiff also seeks leave under Fed. R. Civ.

P. 15(a) to correct her earlier references to the Plaintiff's counterclaims against PEDA, Inc.;

these claims are correctly cross-claims against PEDA, Inc.  Finally, the plaintiff also seeks leave

to strike from paragraph 27 of her Amended Complaint, which is paragraph 34 of her proposed

Second Amended Complaint, the reference to the attachment of a copy of the Amended

Complaint And Jury Demand in the consolidated Frederick Babcock, et. als. action and instead

simply incorporate by reference, the Plaintiffs' Third Amended Complaint And Jury Demand.  A

copy of Plaintiff's proposed Second Amended Complaint And Demand For Jury Trial is attached

at Tab 1.

Briefly, this case arises out of an incident that occurred on January 5, 2002, at

Northeastern University's Parsons Field.  On the evening of January 5, 2002, Plaintiff, Sandra

Babcock's husband was a Brookline firefighter and was stationed at Parsons Field as part of a

landing drill for a Presidential helicopter landing scheduled for later in the week.  In the course

of the drill, a baseball dugout adjacent to where the Plaintiff's husband was standing toppled

from its foundation onto him, injuring him.  Inspection into the incident performed by the Town

of Brookline indicated that the dugout (which had been relocated on Parsons Field as part of a

1995 renovation of that field) had not been properly fastened to its foundation at the time of the

January 5, 2002, landing drill.

## Motion For Leave To Cross-Claim Against Sasaki

Based on these events, the Plaintiff has made claims against the United States,

Northeastern University and a certain of the construction and construction management entities

involved in the 1991 Parsons Field renovation project.  In the course of discovery, the Plaintiff

has learned that Sasaki was the architect of record on the Parsons Field renovation project,

responsible for overall design and control of the construction project, see Tab 2, Dep. Gerald A.

2

Brown, 4/25/06, pp. 33, 68-72; Tab 3, Dep. James J. Nickerson, 3/13/06, pp. 74, 85; Tab 4, Construction Control Certification of John D. Hollywood, P.E., 5/8/01, and that on September 18, 2001 at the conclusion of the renovation project, its agent or employee, John Hollywood, P.E., provided the Town of Brookline with his certification that the Parsons Field Project was in compliance with all applicable building codes and with the plans and specifications for the renovation project. See Tab 4, Final Affidavit of John Hollywood, P.E. Deposition of Brookline building inspectors indicates (a) that the Town of Brookline relied on Sasaki's certification, see Tab 3, Dep. James J. Nickerson, 3/13/06, pp. 163-164, (b) that Sasaki's certification was not correct, see e.g., Tab 3, Dep. James J. Nickerson, 3/13/06, pp. 166, and (c) that the building at issue was not properly constructed. See id.

On May 31, 2006, defendant, Split Boulder Construction Company, Inc., moved for leave to add Sasaki Associates, Inc. as a third-party defendant. This Court granted Split Boulder's Motion on May 31, 2006, see Docket No. 64; the motion was allowed on June 15, 2006, and Split Boulder's third-party complaint was filed on June 20, 2006. See Docket No. 65. Sasaki answered the third-party complaint on July 6, 2006. Plaintiff now seeks leave to cross-claim against Sasaki. In keeping with Fed. R. Civ. P. 13(g), the Plaintiff's claims against Sasaki arise out of the same January 5, 2002, incident that is the subject of her original action; the Plaintiff's Motion is consistent with the spirit of Fed. R. Civ. P. 15, permitting generous access to amendment of pleadings. As the parties are currently engaging in discovery efforts and have not been assigned a pretrial or trial date, and given that Sasaki has recently been added to the suit as a third-party defendant by Split Boulder, there is no prejudice to any party in allowing the Plaintiff's Motion to cross-claim against Sasaki.

3

<u>Motion To Correct References To Plaintiff's "Counterclaims" Against PEDA, Inc.</u>

On May 11, 2005, the Court granted Plaintiff's Motion to amend her Complaint and to claim against PEDA, Inc. based on PEDA, Inc.'s involvement in the Parsons Field renovation project. In her Amended Complaint, however, the Plaintiff incorrectly characterized her claims as "counterclaims". In fact, Plaintiff's claims against PEDA are cross-claims. Plaintiff seeks leave to correct this mischaracterization of her claims against PEDA, and have done so in the attached Second Amended Complaint and Jury Demand.

Motion To Strike Reference To Attachment Of Plaintiffs', Frederick Babcock, et. als'.
<u>Amended Complaint And Jury Claim In Sandra Babcock's Second Amended Complaint</u>

Paragraph 27 of Sandra Babcock's Amended Complaint referenced the attachment and incorporation by reference of the plaintiffs', Frederick Babcock, et. als'. Amended Complaint And Jury Claim. To again attach that pleading creates unnecessary additional paper. The more efficient manner of reference is to incorporate by reference the Plaintiffs', Frederick Babcock, et. als'. proposed Third Amended Complaint And Jury Claim, filed as document number 68 on August 30, 2006.

WHEREFORE, Plaintiff respectfully moves this Honorable Court to allow her (a) to cross-claim against Sasaki Associates, Inc., (b) to allow her to correct her earlier references to "counterclaims" against PEDA, Inc. to indicate that her claims against PEDA, Inc. are in the nature of cross-claims and (c) allow her to strike attaching the Plaintiffs', Frederick Babcock, et. als'. Amended Complaint And Jury Claim to her proposed Second Amended Complaint And

4

Jury Claim and simply incorporate by reference Frederick Babcock, et. als'. proposed Third Amended Complaint And Jury Demand in paragraph 34 of her Second Amended Complaint And Jury Claim.

PLAINTIFF, SANDRA BABCOCK

By her Attorney,

_____

Jeffrey A. Gordek
One Longfellow Place, Suite 3409
Boston, Massachusetts 02114
TEL#:  (617) 314-6953
BBO#: 203890

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on _____9/12/06_____

_____

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDRA BABCOCK,                                    )
    Plaintiff                                  )
                                               )
v.                                                 )     C.A. NO. 04CV12647EHF
                                               )
UNITED STATES OF AMERICA,                          )
NORTHEASTERN UNIVERSITY,                           )
LEDGEWOOD CONSTRUCTION COMPANY,                    )     *consolidated with*
INC., AND SPLIT BOULDER                            )
CONSTRUCTION, INC.,                                )
    Defendants                                 )     C.A. NO. 04CV11413-EFH

NORTHEASTERN UNIVERSITY,                           )
    Defendant/Third-Party Plaintiff            )
                                               )
v.                                                 )     *and*
                                               )
PEDA, INC.,                                        )
    Third-Party Defendant/Defendant-in-        )     C.A. NO. 04CV12003-EFH
    Cross-Claim                                )

SPLIT BOULDER CONSTRUCTION, INC.,                  )
    Defendant/Third-Party Plaintiff            )
                                               )
v.                                                 )
                                               )
SASAKI ASSOCIATES, INC.,                           )
    Third-Party Defendant/Defendant-in-        )
    Cross-Claim                                )

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### Parties

1.      Plaintiff, Sandra Babcock, is and at all times relevant to the allegations set forth in this Complaint, has been a citizen of Massachusetts and was married to Frederick Babcock.

2.      Defendant, United States of America ("United States"), oversees and is responsible for operation of the helicopters used to transport the President of the United States;

for training the pilots of the Presidential helicopters; for drilling landings for the Presidential helicopters; for preparing for such landing drills; for supervising such landing drills; and for control of such helicopters' operation.

3.    Defendant, Department of the Navy ("Navy"), is a department of the defendant, United States, through Marine Helicopter Squadron One, HMX-1, oversees and is responsible for operation of the helicopters used to transport the President of the United States; for training the pilots of the Presidential helicopters; for drilling landings for the Presidential helicopters; for preparing for such landing drills; for supervising such landing drills; and for control of such helicopters' operation.

4.    Defendant, Northeastern University, is a Massachusetts school with a principal place of business in Boston, Massachusetts.

5.    Defendant, Ledgewood Construction Company, Inc., is a Massachusetts corporation with a principal place of business in North Quincy, Massachusetts.

6.    Defendant, Split Boulder Construction, Inc., is a Massachusetts corporation with a principal place of business in Rockland, Massachusetts.

7.    Third-party defendant/defendant-in-cross-claim, PEDA, Inc., is a Massachusetts corporation with a principal place of business in South Weymouth, Massachusetts.

8.    Third-party defendant/defendant-in-cross-claim, Sasaki Associates, Inc., is a Massachusetts corporation with a principal place of business in Watertown, Massachusetts.

**Jurisdiction**

9.    This Court has jurisdiction over the claims against the United States pursuant to 28 U.S.C. §1346(b).

2

10.    This Court has jurisdiction over the claims against the Navy pursuant to 28 U.S.C. §1346(b).

11.    This Court has supplemental jurisdiction over Northeastern University pursuant to 28 U.S.C. § 1367(a), as the plaintiff's claims against all defendants "are so related . . . that they form part of the same case or controversy . . . ."

12.    This Court has supplemental jurisdiction over Ledgewood Construction Company, Inc. pursuant to 28 U.S.C. § 1367(a), as the plaintiff's claims against all defendants "are so related . . . that they form part of the same case or controversy . . . ."

13.    This Court has supplemental jurisdiction over Split Boulder Construction, Inc. pursuant to 28 U.S.C. § 1367(a), as the plaintiff's claims against all defendants "are so related . . . that they form part of the same case or controversy . . . ."

14.    This Court has supplemental jurisdiction over PEDA, Inc., pursuant to 28 U.S.C. § 1367(a), as the plaintiff's claims against all defendants "are so related . . . that they form part of the same case or controversy . . . ."

15.    This Court has supplemental jurisdiction over Sasaki Associates, Inc., pursuant to 28 U.S.C. § 1367(a), as the plaintiff's claims against all defendants and the third-party defendant "are so related...that they form part of the same case or controversy..."

16.    The amount in controversy exceeds, exclusive of interest and costs, the amount of Seventy-Five Thousand Dollars ($75,000.00).

### General Factual Allegations

17.    On January 5, 2002, several Presidential helicopters were scheduled to perform a rehearsal landing at Northeastern University's Parsons Field in Brookline, Massachusetts.

18.    Coordinated by members of HMX-1, the rehearsal had been planned in preparation for President George W. Bush's January 8, 2002, arrival in the area.

19.    As part of this landing drill, members of the Brookline Fire Department, including Captain Frederick Babcock, were required as part of their official duties to be present at the field; Frederick Babcock was stationed on foot near a dugout building ("Dugout") on the field.

20.    Parsons Field, and the Dugout near which Frederick Babcock was standing, are and at all times relevant to these allegations were owned and maintained by Northeastern University, and were and are under Northeastern University's control.

21.    At approximately 5:10 p.m. on January 5, 2002, one of the helicopters participating in the drill approached the ground on the field. As the helicopter neared the ground, its rotor wash blew the dugout from its supports; debris fell on and seriously injured Frederick Babcock.

22.    As a result of this incident, Frederick Babcock suffered injuries including, but not limited to, a right pelvic ramus fracture with anterior column fracture of his acetabulum.

23.    As a result of her husband's injuries in this incident, Sandra Babcock has suffered the loss of her husband's care, society, comfort, companionship and consortium.

24.    A renovation project took place in or around 2001; the 2001 Parsons Field renovation work was done by Ledgewood Construction Company, Inc., Split Boulder Construction, Inc., and PEDA, Inc.

25.    On information and belief, Sasaki Associates, Inc., was the architect of record on the 2001 Parsons Field renovation project.

26.    On information and belief, Sasaki Associates, Inc.'s responsibilities with regard to the Parsons Field renovation project included planning and architectural services for the

4

renovation project, inspection of the work performed on the renovation project, and general oversight of the renovation project, including the relocation of the Dugout.

27.    On information and belief, on or about September 18, 2001, John Hollywood, P.E., then employed by or acting as an agent of Sasaki Associates, Inc., certified that the Parsons Field renovation project had been completed in compliance with all applicable building codes and with the plans and specifications for the renovation of Parsons Field.

28.    On information and belief, the Town of Brookline's building officials relied on this certification during and after completion of the Parsons Field renovation project.

29.    On information and belief, in and around May 2001, PEDA, Inc., agreed to perform construction management and engineering services in connection with the renovation project, which included relocation of the Dugout.

30.    At the time of the incident on January 5, 2002, the Dugout had not been removed, or had been removed from its original location and repositioned on Parsons Field, and was in an unsafe condition.

31.    As a result of the aforesaid incident, Frederick Babcock was caused to sustain severe and permanent personal injuries. He has suffered and will suffer great pain of body and mind, has incurred and will incur significant expense for his medical care, and has been prevented from going about his usual business.

32.    Frederick Babcock made an administrative claim for relief under the Federal Tort Claims Act to Federal agencies including the Department of the Army, the Department of the Air Force, the United States Secret Service and the Department of the Navy. Frederick Babcock demanded Four Million Dollars ($4,000,000). The United States Navy was designated to investigate and decide the merits of these claims; Frederick Babcock had his claim denied.

5

**33.**    Sandra Babcock made an administrative claim for relief under the Federal Tort Claims Act to Federal agencies including the Department of the Army, the Department of the Air Force, the United States Secret Service and the Department of the Navy. Sandra Babcock demanded Two Hundred Fifty Thousand Dollars ($250,000). The United States Navy was designated to investigate and decide the merits of these claims; Sandra Babcock had her claim denied.

**34.**    Frederick Babcock, three other men injured as a result of the same incident and the wife of one of the injured men previously filed an action in this Court, presently pending as civil action number 04-CV-11413-EFH. The wife of one of the plaintiffs in the pending action asserted a derivative loss of consortium claim against the defendants, just as Sandra Babcock is doing in her claim. See Plaintiffs' Third Amended Complaint And Jury Demand in the consolidated Frederick Babcock, et. als. Civil Action No. 04-CV-11413-EFH, which the Plaintiff, Sandra Babcock, incorporates by reference herein.

<u>**COUNT I**</u>

**(Negligence Against the United States)**

The Plaintiff repeats and realleges Paragraphs 1 through 34 of this Second Amended Complaint and makes them Paragraphs 1 through 34 of this Count I as if each were repeated in whole.

35.    Sandra Babcock's loss of consortium was caused entirely or in part by the negligence and carelessness of the United States in the operation of the helicopter(s) involved in the January 5, 2002, drill; in the preparation for the drill, approach and landing; in the supervision of the helicopters' operation and of the drill, approach and landing; and in the control of the helicopters' operation and of the drill, approach and landing.

6

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, United States of America.

## COUNT II

### (Negligence Against the Navy)

The Plaintiff repeats and realleges Paragraphs 1 through 35 of Count I and makes them Paragraphs 1 through 35 of this Count II as if each were repeated in whole.

36.     Sandra Babcock's loss of consortium was caused entirely or in part by the negligence and carelessness of the United States in the operation of the helicopter(s) involved in the January 5, 2002, drill; in the preparation for the drill, approach and landing; in the supervision of the helicopters' operation and of the drill, approach and landing; and in the control of the helicopters' operation and of the drill, approach and landing.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Department of the Navy.

## COUNT III

### (Negligence of Northeastern University)

The Plaintiff repeats and realleges Paragraphs 1 through 36 of Count II and makes them Paragraphs 1 through 36 of this Count III as if each were repeated in whole.

37.     Sandra Babcock's loss of consortium was caused entirely or in part by Northeastern University's negligence and carelessness in failing to maintain its property, Parsons Field, in a reasonably safe condition and in failing to properly inspect, repair and reasonably warn of the dangerous conditions that existed therein.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Northeastern University.

7

## COUNT IV

### (Negligence of Ledgewood Construction Company, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 37 of Count III and makes them Paragraphs 1 through 37 of this Count IV as if each were repeated in whole.

38.     Sandra Babcock's loss of consortium was caused entirely or in part by Ledgewood Construction Company, Inc.'s negligence and carelessness in performing renovations to Parsons Field, including to the Dugout.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Ledgewood Construction Company, Inc.

## COUNT V

### (Breaches of Warranty by Ledgewood Construction Company, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 38 of Count IV and makes them Paragraphs 1 through 38 of this Count V as if each were repeated in whole.

39.     Sandra Babcock's loss of consortium was caused entirely or in part by Ledgewood Construction Company, Inc.'s breaches of warranty of workmanlike performance and/or of fitness with respect to the Parsons Field renovations.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Ledgewood Construction Company, Inc.

## COUNT VI

### (Negligence of Split Boulder Construction, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 39 of Count V and makes them Paragraphs 1 through 39 of this Count VI as if each were repeated in whole.

8

40.     Sandra Babcock's loss of consortium was caused entirely or in part by Split Boulder Construction, Inc.'s negligence and carelessness in performing renovations to Parsons Field, including to the Dugout.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Split Boulder Construction, Inc.

## COUNT VII

### (Breaches of Warranty by Split Boulder Construction, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 40 of Count VI and makes them Paragraphs 1 through 40 of this Count VII as if each were repeated in whole.

41.     Sandra Babcock's loss of consortium was caused entirely or in part by Split Boulder Construction, Inc.'s breaches of warranty of workmanlike performance and/or of fitness with respect to the Parsons Field renovations.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Split Boulder Construction, Inc.

## COUNT VIII

### (Negligence of PEDA, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 41 of Count VII and makes them Paragraphs 1 through 41 of this Count VIII as if each were repeated in whole.

42.     Sandra Babcock's loss of consortium was caused entirely or in part by PEDA, Inc.'s negligence and carelessness in performing renovations to Parsons Field, including to the Dugout.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, PEDA, Inc.

9

## COUNT IX

### (Breaches of Warranty by PEDA, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 42 of Count VIII and makes them Paragraphs 1 through 42 of this Count IX as if each were repeated in whole.

43.    Sandra Babcock's loss of consortium was caused entirely or in part by PEDA, Inc.'s breaches of warranty of workmanlike performance and/or of fitness with respect to the Parsons Field renovations.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, PEDA, Inc.

## COUNT X

### (Negligence of Sasaki Associates, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 43 of Count IX and makes them Paragraphs 1 through 43 of this Count X as if each were repeated in whole.

44.    Sandra Babcock's loss of consortium was caused entirely or in part by Sasaki Associates, Inc.'s negligence and carelessness in performing renovations to Parsons Field, including to the Dugout.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Sasaki Associates, Inc.

## COUNT XI

### (Breaches of Warranty by Sasaki Associates, Inc.)

The Plaintiff repeats and realleges Paragraphs 1 through 44 of Count X and makes them Paragraphs 1 through 44 of this Count XI as if each were repeated in whole.

45.    Sandra Babcock's loss of consortium was caused entirely or in part by Sasaki Associates, Inc.'s breaches of warranty of workmanlike performance and/or of fitness with respect to the Parsons Field renovations.

WHEREFORE, Plaintiff, Sandra Babcock, demands judgment against the Defendant, Sasaki Associates, Inc.

**PLAINTIFF DEMANDS TRIAL BY JURY OF ALL MATTERS SO TRIABLE.**

PLAINTIFF, SANDRA BABCOCK

By her Attorney,

Jeffrey A. Gorlick
One Longfellow Place, Suite 3409
Boston, Massachusetts  02114
TEL#:  (617) 314-6953
BBO#:  203890

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on ___9/1~/06_

11

1

Volume:   1
Pages:    1-154
Exhibits: 52-55

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-11413-EFH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*x
FREDERICK BABCOCK, et al
                    Plaintiffs

          vs.

UNITED STATES OF AMERICA, et al
                    Defendants
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*x

            DEPOSITION OF GERALD A. BROWN, a

   witness called on behalf of the Defendant,

   Northeastern University, pursuant to the applicable

   provisions of the Federal Rules of Civil Procedure,

   before Camille Macomber, Registered Professional

   Reporter and Notary Public within and for the

   Commonwealth of Massachusetts, at the Law offices of

   Nelson, Kinder, Mosseau & Saturley, P.C., 45 Milk

   Street, Seventh Floor, Boston, Massachusetts, on

   Tuesday, April 25, 2006, commencing at 10:10 a.m.

               SHEA COURT REPORTING SERVICES
              ONE UNION STREET, SECOND FLOOR
               BOSTON, MASSACHUSETTS 02108
                      (617)227-3097

APPEARANCES:

ESDAILE, BARRETT & ESDAILE
By Kathryn E. Hand, Attorney
75 Federal Street
Boston, Massachusetts 02110
        On behalf of the Plaintiffs,
        Frederick Babcock, Joseph Canney,
        Thomas Gregorio, John Kelley, and
        Yvonne Kelley

UNITED STATES DEPARTMENT OF JUSTICE
By Matthew A. Connelly, Esquire
Post Office Box 14271
Washington, D.C. 20044-4271
        On behalf of the Defendant,
        United Sates of America

NELSON, KINDER, MOSSEAU & SATURLEY, P.C.
By Gerald F. Lucey, Esquire
45 Milk Street, Seventh Floor
Boston, Massachusetts 02109
        On behalf of the Defendant,
        Northeastern University

CASNER & EDWARDS, LLP
By Christopher P. Maffucci, Esquire
303 Congress Street
Boston, Massachusetts 02210
        On behalf of the Defendant,
        Ledgewood Construction Company, Inc.

DONOVAN HATEM, LLP
By Brian C. Newberry, Esquire
Two Seaport Lane
Boston, Massachusetts 02210
        On behalf of the Defendant,
        Sasaki Associates, Inc.

MASI & BRUNO
By John H. Bruno II, Esquire
124 Long Pond Road, Unit 11
Plymouth, Massachusetts 02360
        On behalf of the Defendant,
        Split Boulder Construction, Inc.

Also Present:  Brian J. Burns, Esquire

3

I N D E X

WITNESS                    EXAMINATION

Gerald A. Brown
  By Mr. Lucey.............4, 136
  By Mr. Maffucci.........76
  By Mr. Connelly........96, 148
  By Mr. Bruno...........118

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 52 | *Subpoena Duces Tecum with attached Schedule A*...................................10 | |
| 53 | *two-sided document for the Phase 2 Permit for 186 Kent Street, originally marked Exhibit 35*...................................90 | |
| 54A-L | Photographs...................................137 | |
| 55 | Brookline Police Department Supplemental Report, dated 1/5/02, written by Barry McNeilly...................................145 | |

(Exhibits retained by Attorney Lucey)

```
1    A    Controlled construction is anything over 35,000

2         cubic feet or commercial type construction or

3         anything a building official deems necessary to

4         hire or to have the stamp of a registered

5         professional on board.

6    Q    You mentioned code review, does that come after

7         the initial building code analysis?

8    A    The building code analysis is provided on a

9         controlled construction job by the architect of

10        record.

11   Q    In what form does that building code analysis

12        take?

13   A    In a narrative form on the drawings or it could

14        be a separate form.

15   Q    The code review is conducted by you of that

16        narrative?

17   A    Right.

18   Q    Or --

19   A    Simultaneously, if he brings it in, which I

20        requested he brings it in, I would have to

21        review this stuff.

22   Q    Final affidavit, again, relates to controlled

23        construction; correct?

24   A    Right.
```

68

```
 1              and I will ask if you can identify that for the
 2              record?
 3     A   It is a control construction document by Sasaki
 4         Associates, Inc., Exhibit Number 39.  This is
 5         the site work permit, John Hollywood, who is the
 6         PE of record, I believe, right, on those
 7         drawings?
 8     Q   Right.
 9     A   Registration 28920, signing that he will take
10         control over this job.
11     Q   When you say take control over the job, what do
12         you mean?
13     A   Control construction, he will be present on the
14         job for periodic inspections, and certify that
15         the job will be built according to the
16         specifications, plans and drawings.
17     Q   Are those the permit set of drawings that we
18         previously talked about a few moments ago?
19     A   Yes.
20     Q   Now, down below on Exhibit 39, Mr. Hollywood
21         certifies that he will perform the necessary
22         professional services and be present on the
23         construction site on a regular and periodic
24         basis to determine that the work is proceeding
```

69

```
 1            in accordance with documents approved for the
 2            building permit; correct?
 3    A       Yes.
 4    Q       Below that -- well, Number 3 under that section
 5            states what, if you could read it for the
 6            record?
 7    A       "Special architectural or engineering
 8            professional inspection of critical construction
 9            components required controlled materials or
10            construction specified in the accepted
11            engineering practice listed in Appendix B."
12    Q       And that's Appendix B to what, please?  Do you
13            know what that refers to?
14    A       Special engineering, I think.
15    Q       Is there an Appendix B or would there have been
16            an Appendix B to this construction control
17            affidavit?
18    A       I believe they're talking about the 780 CMR
19            Building Code.  Appendix B is special
20            architectural engineering services.  That's
21            Appendix B.  That's in the Building Code.
22    Q       The last paragraph on Exhibit 39 indicates that
23            Mr. Hollywood will submit periodically progress
24            reports together with pertinent comments to the
```

1       Brookline Building Inspector, and upon

2       completion of the work that he will submit a

3       final report as to the satisfactory completion

4       and readiness of the project for occupancy; is

5       that correct?

6    A  That is correct, and that is what's required by

7       law.

8    Q  Do you know whether or not Mr. Hollywood or

9       Sasaki Associates submitted periodic progress

10      reports or a final report to the Town of

11      Brookline in connection with the Parsons Field

12      renovation project?

13   A  I don't recall any inspection reports in my

14      hand.   That was five years ago.   There should be

15      a public record if he had submitted those, and

16      there should be a public record if he had

17      submitted the final affidavit, which is required

18      by law.

19   Q  When you say a public record, are you referring

20      to a file in the Building Department in the Town

21      of Brookline?

22   A  A document that you have the final inspection

23      affidavit.

24   Q  I'm going to show you that in a moment, but

71

| | | |
|---|---|---|
| 1 | | based upon your review and understanding of |
| 2 | | Exhibit 39, was Mr. Hollywood obligated to |
| 3 | | submit periodic progress reports in connection |
| 4 | | with the Parsons Field renovation project? |
| 5 | A | Yes. |
| 6 | Q | If he did that, they should be on file with the |
| 7 | | Town of Brookline? |
| 8 | A | Yes. |
| 9 | Q | And if he didn't do that, what would you have |
| 10 | | expected the Town of Brookline to do? |
| 11 | A | They should have called him up and made him do |
| 12 | | it. |
| 13 | Q | When you say they, who do you mean? |
| 14 | A | My office at that time.  The Town of Brookline's |
| 15 | | Building Department should have done it. |
| 16 | Q | Let me show you what's previously been marked as |
| 17 | | Exhibit 38, and ask if you can identify it? |
| 18 | A | That is a final affidavit by the same civil |
| 19 | | engineer, PE, John Hollywood, Exhibit Number 38 |
| 20 | | saying that he went before a commission and |
| 21 | | before a notary public, "He has inspected the |
| 22 | | construction at Northeastern University Parsons |
| 23 | | Field under Permit BL0100515.  This site |
| 24 | | conforms to submitted plans and codes of the |

1      Town of Brookline and the Commonwealth of

2      Massachusetts.  Further, that all required

3      approvals, materials and affidavits have been

4      submitted, and there is no violations of laws or

5      orders by the Department of Public Buildings.

6      I, as the affidavit engineer, hereby certify

7      that the date of September 18, 2001, inspected

8      the property located at 186 Kent Street, and

9      find the locus comply with my plans and

10     specifications and rules and regulations of the

11     Town of Brookline and the Commonwealth of

12     Massachusetts.  Therefore, I request a

13     certificate of occupancy for the above address."

14     Signed by him and notarized.

15  Q   What is the significance of that final affidavit

16     to you as a building inspector?

17  A   That he has inspected the structures that he has

18     applied for permit for, that he is overseeing,

19     that he has followed the rules of controlled

20     construction, and is submitting the affidavit

21     stating as such.  And he's asking for occupancy

22     under his stamp and signature.

23  Q   As we sit here today, do you recall whether or

24     not a certificate of occupancy issued from the

154

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS
NORFOLK, SS.

      I, Camille Macomber, Notary Public and Registered Professional Reporter in and for the Commonwealth of Massachusetts, do hereby certify:

      That Gerald A. Brown, the witness whose deposition is hereinbefore set forth on pages 4 through 152, inclusive, was duly sworn by me; that his testimony thereupon given was recorded by me stenographically and transcribed by me; and that such deposition is a true record of the testimony given by the said witness to the best of my knowledge, skill and ability.

      IN WITNESS WHEREOF, I hereunto set my hand this 4th day of May 2006.


                  _____
                  Camille Macomber, RPR
                  Court Reporter
                  Notary Public

My Commission Expires:
July 27, 2012

VOLUME I

PAGES 1 - 213

EXHIBITS 31-43

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO: 04-CV-11413-EFH
(and consolidated cases)

FREDERICK BABCOCK, ET AL

vs.

UNITED STATES OF AMERICA, ET AL

**DEPOSITION OF JAMES J. NICKERSON**,
taken pursuant to the applicable provisions
of the Federal Rules of Civil Procedure on
behalf of the Defendant, Split Boulder
Construction, Inc., before Dawn M.
Cunningham, CSR, RPR, and Notary Public in
and for the Commonwealth of Massachusetts, at
the offices of Nelson, Kinder, Mosseau &
Saturley, PC, 45 Milk Street, Boston,
Massachusetts, on **Monday, March 13, 2006**,
commencing at 10:17 a.m., pursuant to Notice
and agreement of parties as to the date and
time of taking said deposition.

* * * * *

---

2

APPEARANCES:

Esdaile, Barrett & Esdaile
75 Federal Street
Boston, Massachusetts 02110-1904
(By Michael E. Mone, Jr., Esquire)
Representing the Plaintiffs.

U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box J4271
Washington, DC 20044-4271
(By Stephen M. Ketyer, Esquire)
Representing the Defendant, United
States of America.

Nelson, Kinder, Mosseau & Saturley, PC
45 Milk Street
Boston, Massachusetts 02109
(By Gerald F. Lucey, Esquire)
Representing the Defendant, Northeastern
University.

Casner & Edwards, LLP
303 Congress Street
Boston, Massachusetts 02210
(By Christopher Maffucci, Esquire)
Representing the Defendant, Ledgewood
Construction Company, Inc.

Masi & Bruno
124 Long Pond Road, Unit 11
Plymouth, Massachusetts 02360
(By John H. Bruno, II, Esquire)
Representing the Defendant, Split
Boulder Construction, Inc.

---

3

APPEARANCES CONTINUED:

Joslin Murphy, Esquire
Office of Town Counsel
Town of Brookline
333 Washington Street
Brookline, Massachusetts 02445
Representing the Plaintiff, Town of
Brookline and the Deponent.

Donovan Hatem, LLP
World Trade Center East
Two Seaport Lane
(By Brian Newberry, Esquire)
Representing the Defendant, PEDA, Inc.

Also Present:   Brian Burns, Esquire
                Northeastern University

* * * * *

---

4

I N D E X

DEPOSITION OF:

JAMES J. NICKERSON

|                                          | Page |
| ---------------------------------------- | ---- |
| Direct Examination by Mr. Bruno          | 6    |
| Direct Examination by Mr. Maffucci       | 98   |
| Direct Examination by Mr. Mone           | 152  |
| Direct Examination by Mr. Ketyer         | 156  |
| Direct Examination by Mr. Lucey          | 166  |

* * * * *

Let me just move this to the side for a moment.

It would be a -- what we -- let me find it.

This would be a final affidavit.

Do you have that document?

I do.

Okay. Thank you.

MR. BRUNO: Let's have this marked.

Now, this is an original document since I can see the seal on it.

Uh-huh.

MR. BRUNO: Let me just have that marked as the next exhibit which is --

MR. KETYER: 38 I think.

MR. BRUNO: -- 38.

(Exhibit No. 38, Final Affidavit, so marked.)

Okay. Can you identify for us what -- Exhibit 38, what it is?

It's a final affidavit where the engineer or the architect goes out and tells us that it has been built according to the state building code and he signs it and this is signed by the engineer.

Q    What's the date on Exhibit 38?

A    The date on this here is September 18, 2001.

Q    Okay. And the person whose affidavit --

A    This was signed by John D. Hollywood, civil engineer.

Q    Do you know who Mr. Hollywood represents or works for?

A    He works for the -- no, I don't know whether he's working for the -- I believe he's working for the contractor. It says here that he inspected the construction of Northeast University Parsons Field at 186 Kent Street and he signed it.

Q    Okay. Now, does the Town of Brookline Building Department also do an inspection -- or a final inspection of any sort?

A    Yes. We go out and do a final but we usually have an engineer sign-off on everything because he's supposed to be there when things are happening and overseeing the job because under the building code when you have a -- that large of a project, it comes under controlled construction, and it's up to the engineer to oversee it.

It needs an engineer?

Yes.

And the engineer in this case was Mr. Hollywood?

Yes.

But Mr. Hollywood didn't work for Brookline, he worked for a contractor?

That's true.

Okay. That's the usual way of handling that?

That's the way it is handled according to the building code.

Is there any other separate report issued by the Town of Brookline building inspector, in this case Mr. Brown, indicating that he has gone and looked at the renovation project?

Only in his -- in his daily log that he keeps.

Okay. So we -- as we sit here today, we have no way of knowing whether Mr. Brown actually went and looked at the project or inspected anything whenever it was concluded in 2001?

We have no evidence, no.

Okay. I also noted that on Exhibit 38 it references permit number 0100515 which is

Exhibit No. 36 which was the -- let's see here -- first of the two permits that were issued by Brookline.

Is there an inspection report or affidavit, relating to Exhibit No. 34B, which is permit number 0100524?

A    There is an affidavit here but it doesn't -- it doesn't say what permit. It just says the site work at Northeastern Parsons Field.

Q    Okay.

MR. BRUNO: Let me have that marked. Again, that's an original document and this will be 39.

(Exhibit No. 39, Affidavit, so marked.)

Q    Exhibit 39, Mr. Nickerson, it indicates at the top here construction control?

A    Uh-huh.

Q    And it has as a date May 8, 2001 which would be the time when the building permits were -- the applications were first submitted.

A    Uh-huh.

Q    So is this a different document than Exhibit 38?

85

made an inspection or would he have required an engineering drawing of some sort?

A   That would have come under the controlled construction and the engineer would have overseen -- the engineer is responsible for overseeing everything under controlled construction and that's what that site was.

Q   Okay. Would it go down to the detail of what sort of fasteners were used to hold the dugout to its foundation in its new location, the engineer's responsibility?

A   Yes. The engineer signs that it was built according to the building code.
        MR. LUCEY:   I'm sorry, I didn't hear the last part.

A   The engineer would sign his affidavit saying that under -- that the building -- or the work done at the site was done according to the building code.
        MR. LUCEY:   Thank you.

A   To the best of his knowledge.

Q   Going back to the building code that we asked you to look at here, you referenced Section 3606.2.3A as the fasteners schedule?

86

A   Uh-huh.

Q   And looking at the building code, that's a table?

A   Uh-huh.

Q   And in this table does it indicate where -- can you tell me where it indicates the foundation attachments?

A   Let me just check something here.
        I'd have to look it up to find the exact area where it talks about the number of bolts and --

Q   Is it not in that table that you referenced earlier, the --

A   No, it's not in that table.

Q   What section do you think it may be in?

A   Foundation -- foundation walls and I'm looking for the sill plate, where it talks about the sill plate.
        MR. BRUNO:   S-I-L-L.

A   I have no idea which section it's in right now. I'd have to spend some time to look for it.

Q   Okay. We can come back to that.
        I did note that in 3606.2.3.1 where

87

you indicated special provisions, high wind noting, that the building code actually referenced a map that said -- for high wind loading. Where is that map?

A   There's a whole section on wind and foundations and everything so I'd have to find all that for you.

Q   Is that something you might have to study a little bit on the book there to come up with an answer?

A   Yeah. I don't even -- yes. Yeah, something like that. You know, I don't go into this thing on a daily basis.

Q   Okay. In the permit applications that we've discussed such as Exhibit No. 37, it references -- no, not 37. 34B, on the back of the permit it references total cost of the job and then the permit fee.
        And -- for example, on the permit that was 34B with its application, which is 35, it references $638,500. This is for Phase II. And for permit number -- for Exhibit No. 36, which is the earlier permit, the application on this one indicates at

first $500,000 with a permit fee of 10,000 and then next to it is a number, $1,138,500.
        Do you know what that one extra number is?

A   No idea. No idea.

Q   Was this project considered a large project for the Brookline Building Department?

A   Yes.

Q   And --

A   It was all -- yes, it was.

Q   And would it also have been a sensitive project because of the history with the neighbors around the Parsons Field?

A   Yes.

Q   Something that the building department would want to pay attention to to make sure it went right?

A   We wanted to make sure that they stayed within the footprint and didn't expand or do away with any of the open grass or create more parking or eliminate more parking.

Q   Okay. Let me skip ahead now to the -- this incident that happens in January of 2002 with the helicopters.

161

And if not, why don't you just read through it.

Have you had an opportunity to -- first of all, have you seen this before?

No.

Okay. On page 2 there is a paragraph and it's the second paragraph on the page --

MR. KETYER:   For the record this is a supplemental report signed by a Detective Barry S. Neilly of the Brookline Police Department dated -- well, it refers to January 5, 2002.

MS. MURPHY:   That's McNeilly.

MR. KETYER:   I'm sorry, McNeilly. You'll see it says it should be noted. Do you see that paragraph?

Uh-huh.

Now, when the dugout was in its original location, there were three columns, four by fours, affixed to the top along the joist system.

Should those three columns have been anchored or attached to anything at the bottom?

162

A    I would say yes but that would be up to an engineer to determine just how they should be secured.

Q    Why would you say yes?

MR. LUCEY:   Objection.

A    Because the columns just sitting there by themselves could be knocked out of place by somebody just hitting them.  So that's the reason I would say that they should be anchored but -- for safety reasons but the building itself, if the engineer had secured it to his specifications it wasn't going to go anywhere.

Q    So is it fair to say that you're thinking that the -- the fact that the columns may not have been attached to the foundation, would that have been a violation of the code?

A    The columns?

MR. LUCEY:   Objection.

MR. NEWBERRY:   Objection.

A    No.

Q    Because?

A    Well, again, I would have to see what -- the engineer's method of securing that to the

163

foundation and, you know, if the columns were -- were secured -- not bolted but secured so that they couldn't be drifted away.  I think the columns were -- were just holding up the front edge of it.  They weren't holding up -- they weren't meant to keep the unit down or to secure it in place in any way.

Do you know what, if anything, would keep the dugout from being blown away?

Just -- no, I don't.

Would that have been a -- one of the things that your inspectors would have inspected for?

MR. BRUNO:   Would what have been?

No.

MR. BRUNO:   I didn't understand the question.  Would what have been one of the things they would have inspected for?

MR. KETYER:   That the structure was anchored.

Oh, that it was anchored down properly?

Well, we would have relied on the engineer to tell us that it was built according to the

164

code but when we went out there, we would have looked, yes.

Q    And as you've testified, there was no such engineering information?

A    I -- we didn't have any.

Q    When you talk about hurricane wind conditions, is that something that you could describe in terms of wind speed and duration?

A    No.  That would be up to an engineer to -- to look at the situation and tell us if it was required for that area.

Q    So you would have to rely on the formulas in the state building code?

A    Yes.  And working with the Town -- with the engineer on-site that would be designing this.

Q    In general when a roof is supported by posts, is there any requirement whether or not those posts should be attached to the foundation at the bottom?

A    Yes.  Yeah.  They -- normal construction we see them all attached.

Q    Have you ever seen in construction where they're not attached?

165

A    Yes.

Q    And where have you seen those?

A    I can't tell you where. I mean, I don't recall, but I have seen some that were -- they weren't a very large structure that was -- that wasn't supporting a whole lot but they were secured by methods of the building itself. They weren't just standing out there free.

　　　MR. KETYER:    I believe that's all I have. Thank you.

　　　MR. LUCEY:    Let's take a two-minute break or a four-minute break.

　　　(Recess taken.)

　　　MR. KETYER:    I have one more question.

Q    (By Mr. Ketyer) Referring to Exhibit 26 --

A    Yes.

Q    -- was there anything within this exhibit that you saw that you thought might have -- might describe a violation of the building code?

A    Yes.

Q    And what was that?

166

A    The cutting off of the -- of the studs that were to hold the plate on.

Q    How is that a violation of the building code?

A    Well, it's -- the plate is supposed to be secured to the foundation, and those bolts were put in there purposely to secure that to the foundation.

Q    Wouldn't wedge anchors have been a suitable alternative?

A    That, again, would be up to the engineer. If he said so, then we wouldn't have a problem with them. But to see them just cut off and discarded we definitely would have asked for an engineer to give us a report.

Q    And when you say a report, what would you expect to --

A    To tell us that the method of anchoring it to the concrete was suitable.

　　　MR. KETYER:    Thank you. No more.

DIRECT EXAMINATION

Q    (By Mr. Lucey) Good afternoon, Mr. Nickerson. My name is Gerald F. Lucey. I represent Northeastern University.

167

And based on my understanding of your testimony here today, there are no documents that are within the possession, custody, or control of the Town of Brookline, at least to your knowledge, which indicate to the Town of Brookline that the dugouts at Parsons Field were to be relocated as part of this 2001 renovation project; is that correct?

Yes.

Okay. Assuming that to be the fact, would it have been within the building inspector, Gerald -- last --

Brown.

-- Brown's authority to make a field decision to approve the relocation of the dugouts as part of the work?

He -- he could have but he would have also asked for an additional permit to do that -- to cover that.

And are you sure of that?

I'm not 100 percent sure but that's the -- the procedure that we should -- he should have followed.

Okay. But is it fair to say that procedures

168

that one individual employee of the building department perhaps should have followed don't always get followed?

A    I can't answer that.

Q    Well, the logs should have been maintained, correct?

A    Uh-huh.

Q    And we can't find those, correct?

A    Right. But the log was maintained but we just can't find it right now.

Q    And what is your basis for saying that the log was maintained?

A    Because I seen him -- I've seen his logs. I've seen his paperwork filled out on his desk, and I've seen his -- where he puts them. So I did see them.

Q    Where did he customarily put them?

A    He put them in the drawer in his desk and then he would transfer them from there to the safe, put them in the safe. So I did see them.

Q    Is this a safe where other building inspectors kept their logs?

A    Yes.

Q    And who had the combination to that safe?

GOUDREAU & GROSSI
Court Reporting Service
63 Winthrop Street
Taunton, Massachusetts 02780
508-823-4659

March 29, 2006

Joslin Murphy, Esquire
Office of Town Counsel
Town of Brookline
333 Washington Street
Brookline, MA 02445

Re: Babcock, et al VS. USA, et al

Dear Attorney Murphy:

Enclosed please find a copy of the deposition of your client, James Nickerson, taken on March 13, 2006 regarding above-captioned matter. Please arrange to have Mr. Nickerson read the transcript and sign the signature page.

Any changes or corrections may be indicated on the errata sheet and returned along with the original signature page to this office. Copies of the same should be forwarded to all counsel of record, as well as to this office. Thank you for your anticipated cooperation.

Sincerely,

Dawn M. Cunningham

DMC/dmc
Enclosure
cc:  Michael E. Mone, Jr., Esquire
     Stephen M. Ketyer, Esquire
     Gerald F. Lucey, Esquire
     Christopher Maffucci, Esquire
     John R. Bruno, II, Esquire
     Brian Newberry, Esquire

GOUDREAU & GROSSI COURT REPORTING
(508) 823-4659

Tab 4



3-13-06
Cut Buckler
EXHIBIT NO. 39
Dmc [ J. N.



# TOWN of BROOKLINE
## *Massachusetts*

## BUILDING DEPARTMENT

James J. Nickerson
Building Commissioner

### CONSTRUCTION CONTROL

Address: __186 Kent Street_____   Owner: __Northeastern University__

Architect/Enginner: __Sasaki Associates, Inc.__

In accordance with Section 116.0 of the Massachusetts State Building Code, I, John D. Hollywood Registration No. __28920__ being a registered professional engineer/architect hereby certify that I have prepared or directly supervised the preparation of all design plans, computations and specifications concerning:

Entire Project _____   Architectural _____   Structural _____
Mechanical _____   Electrical _____   Fire Protection _____
Other (Specify) __Site work_____

For the above named project and that, to the best of my acknowledge, such plans computations and specifications meet the applicable provisions of the Massachusetts State Building Code, all acceptable engineering practices and applicable laws and ordinances for the proposed use and occupancy.

I further certify that I shall perform the necessary professional services and be present on the construction site on a regular and periodic basis to determine that the work is proceeding in accordance with the documents approved for the Building Permit and shall be responsible for the following as specified in Section 116.2.2:

1.   Review of shop drawings, samples and other submittals of the contractor as required by the construction contract documents as submitted for building permit approval for conformance to the design concept.
2.   Review and approval of the quality control procedures for all code required controlled materials.
3.   Special architectural or engineering professional inspection of critical construction components requiring controlled materials or construction specified in the accepted engineering practice standard list in Appendix B.

PURSUANT TO SECTION 116.2.3, I SHALL SUBMIT PERIODICALLY A PROGRESS REPORT TOGETHER WITH PERTINENT COMMENTS TO THE BROOKLINE BUILDING INSPECTOR. UPON COMPLETION OF THE WORK, I SHALL SUBMIT A FINAL REPORT AS TO THE SATISFACTORY COMPLETION AND READINESS OF THE PROJECT FOR OCCUPANCY.

_____
Signature

Subscribed an sworn to be before me this __8th__ day of __MAY__ __19 2001__

__Deborah L. West_____   __JUNE 30, 2006__
Notary Public                   My Commission Expires

DEBORAH L. WEST
Notary Public
My Commission Expires June 30, 2006



3-13-06
EXHIBIT NO. 38
Dml J. N.

# TOWN of BROOKLINE
## *Massachusetts*

## BUILDING DEPARTMENT

James J. Nickerson
Building Commissioner

### FINAL AFFIDAVIT

On this __Eighteenth__ day of __September 2001__ before me,
__Deborah L. West__ a Notary Public duly
commissioned and qualified for the Commonwealth of Massachusetts, personally
appeared __John Hollywood__ who inspected the construction of
__Northeastern Univ., Parsons Filed, 186 Kent Street__

((Property Name)            (Street Address)
                                                              site
under Permit # __BL0100515__ and that this ~~structure~~ conforms to the submitted
plans and to the codes of the Town of Brookline, and the Commonwealth of
Massachusetts.

Further, that all required approvals and materials affidavits have been submitted,
and that there are no violations of Law of Orders of the Department of Public
Buildings pending.

I, as the affidavitted ~~Architect~~/Engineer hereby certify that I have on this date
__September 18, 2001__ inspected the property located at __186 Kent Street__
                                                                                    Street

__Address__

and find that the locus comply with my plans and specifications and all Rules
and Regulations of the codes of the Town of Brookline and the Commonwealth
of Massachusetts.

THEREFORE, I REQUEST A CERTIFICATE OF OCCUPANCY FOR THE
ABOVE ADDRESS.

[Seal: COMMONWEALTH OF MASSACHUSETTS / JOHN D. HOLLYWOOD / CIVIL / No. 29920 / REGISTERED PROFESSIONAL ENGINEER]

ORIGINAL SIGNATURE AND SEAL

SUBSCRIBED AND SWORN TO BEFORE ME THIS __18th__ DAY
OF __SEPTEMBER__.

DEBORAH L. WEST
Notary Public
My Commission Expires June 30, 2006

NOTARY PUBLIC

333 Washington Street, Brookline, Massachusetts 02146
Tel: (617) 730-2100     Fax: (617) 739-7542