# ATTACHMENT L

VOL. II

PAGES 213-291

EXHIBITS 13A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV-11413-EFH

FREDERICK BABCOCK, et al, )
Plaintiffs, )
)
vs )
)
UNITED STATES OF AMERICA, )
et al, )
Defendants. )

CONTINUING DEPOSITION of JOHN MALONE, taken on behalf of the plaintiffs, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Katherine Henry-Sexton, a Notary Public in and for the Commonwealth of Massachusetts, at the offices of Esdaile, Barrett and Esdaile, 75 Federal Street, Boston, Massachusetts, on Thursday, April 20, 2006, commencing at 10:05 a.m.

APPEARANCES:

Esdaile, Barrett and Esdaile, (by Kathryn E. Hand, Atty.), 75 Federal Street, Boston, Massachusetts 02110-1904, for the plaintiffs.

Nelson, Kinder, Mosseau and Saturley, PC, (by Gerald F. Lucey, Esq.), 45 Milk Street, Fifth Floor, Boston, Massachusetts 02109, for the defendant, Northeastern University and deponent.

United States Department of Justice, (by Matthew A. Connelly, Esq.), Torts Branch, Civil Division, P.O. Box 14271, Washington, DC 20044-4271.

Masi and Bruno, (by John H. Bruno, Esq.), 124 Long Pond Road, Unit 11, Plymouth, Massachusetts 02360, for the defendant, Split Boulder Construction.

Casner and Edwards, LLP, (by Christopher P. Maffucci, Esq.), 303 Congress Street, Boston, Massachusetts 02210, for the defendant, Ledgewood Construction.

Donovan Hatem, LLP, (by Brian C. Newberry, Esq.), Two Seaport Lane, Boston, Massachusetts 02210, for the defendant, PEDA, Inc.

Law Offices of Jeffrey A. Gorlick, (by Jeffrey A. Gorlick, Esq.), One Longfellow Place, Suite 3409, Boston, Massachusetts 02114, for the plaintiff, S. Babcock.

Also Present: Brian Burns, Esq.
Northeastern University

# I N D E X


| Deposition of: | | Page |
|---|---|---|
| JOHN MALONE | | |
| | Examination by Ms. Connelly | 216, 278 |
| | Examination by Mr. Maffucci | 263 |
| | Examination by Ms. Hand | 271 |

| Exhibits | | Page |
|---|---|---|
| No. 13A | Field diagram. | 271 |

STIPULATIONS

It was stipulated and agreed by and between counsel for the respective parties that the sealing, filing and certification of the deposition are waived.

It was further stipulated and agreed that all objections, except as to form of question, including motions to strike, shall be reserved until the time of trial.

JOHN MALONE, a witness called on behalf of the plaintiffs, first having been satisfactorily identified and previously sworn by the Notary Public, on oath continues to depose and says as follows:

Examination by Mr. Connelly:

Q. We'll begin with the continuation of the deposition of Mr. Malone. Sir, my name is Matthew Connelly. We've met before, but for the record I represent the United States in this action. Now, during the first part of your deposition, sir, there was some discussion about your presence at the rehearsal on January 5th,

on the field?

A. We walked onto the field together and proceeded out to the middle of the field.

Q. When you say the field - the middle of the baseball field, middle of the football field?

A. We began behind the third base dugout and walked out towards the middle of center field behind second base.

Q. I'll get to the second individual in a moment. During this first conversation was there any discussion where on the field the helicopters were going to land?

A. We walked to the middle of the field, and he said this is where the helicopters would be landing.

Q. At the time he said that, you were somewhere out in center field behind second base?

A. I can't specifically say that. We walked to the middle of the field.

Q. I guess I'm trying to figure out what you consider the middle of the field. We'll make this an exhibit, but right now it's the

second page of Exhibit 13. It's just a field diagram on the back of one of PEDA's reports. Whatever the next exhibit number is, we'll mark this. I'll show you this, sir, and ask you if that diagram represents the layout on the field on the day you had this discussion with this gentleman.

MR. LUCEY: Objection. It's dated May 14th.

MR. CONNELLY: I understand it's dated May 14th. I'm asking him if the diagram represents it.

And the question is, Mr. Malone - take a look at the picture please, take what time you need, but tell me whether or not that diagram accurately represents the layout of the field?

A. No, it doesn't.

Q. What's different about it?

A. This is the layout of the existing field, so the field shifted.

Q. Which way did it shift?

A. It shifted up this way a little, about 20 feet, 25 feet.

Q. So the baseball diamond shifted 25 feet closer to the football field?

A. Yeah, this way.

Q. If I took a line through home plate and the pitcher's mound, it would be kind of like 25 feet along that line?

A. Correct.

Q. Well, taking that into account, sir, what I'd like you to do is take a pen and make an X where approximately you were when you had this discussion?

MR. LUCEY: Don't guess.

A. The discussion began here, and we walked out into the field out towards the middle of the field. There was no specific route.

Q. So more or less near that circle?

A. That's correct, more or less.

Q. When you say the discussion began here, you're pointing to one of the maintenance buildings on the first base side of the field?

A. The discussion could have begun on the introductions in here, and we walked out to the field.

Q. You've got two circles. If you'll

Q. Other than being introduced to a bunch of people and making sure the tables and chairs were set up, what else did you do while you waited for the helicopters to arrive?

A. I actually made a lot of personal calls. I was missing my son's hockey game, as I recall. My dad - I made some personal calls.

Q. Getting scores from your dad?

A. My dad had just passed away, so no.

Q. I'm very sorry. Sir, where were you on the field or at the complex when the helicopters approached the field?

A. I was next to the office building.

Q. Did the office building move during the renovation?

A. No, it did not.

Q. Is the office building on this diagram we've been using?

A. Yes, it is.

Q. Can you just draw an arrow to it and write off in the white space to the office building. Which way did the helicopters approach the field?

A. They approached the field coming down

Kent Street this way.

Q. Can you just give me a general arrow? And if you could put an H right there for the helicopters. Now, did you watch the approach of the helicopter?

A. Yes.

Q. Did you stay in that general location next to the office building as they approached?

A. Yes.

Q. So what I'd like you to do is kind of describe for me what you did from when you first saw the helicopters until the accident occurred?

A. You could hear the helicopters coming before you could see them. So I had actually been, you know, in the office either making a phone call or just outside. So when the helicopters came, I stepped out into the pathway, and I could see the helicopters coming over - I could hear them first. And they approached down Kent Street and entered into the field. Once they entered into the field, the helicopters swung over around second base and turned back towards - facing the same - facing where I was standing.

hundred feet in the air. It's hard for me to know the exact location; but once he turned in, he hovered. And you know, the helicopter's nose dipped, and he started to land, started to come down. And he rose back up again and started to come back down. And to me it looked like - he didn't change positions all that much, but then he came down to the ground.

Q. Let me ask this - was the sun up at this point?

A. No.

Q. Were the stadium lights on at this point?

A. Yes.

Q. Did you have any trouble seeing the helicopter?

A. No.

Q. Did you have any trouble seeing the other side of the field?

A. No.

Q. I'm just trying to get an idea.

A. The lights were on.

Q. So then the helicopter landed. What happened next?

A. As the helicopter approached, there was quite a lot of dust and dirt and leaves that came down this pathway as the helicopter came in. As it came over this, back, it blew a lot of dust and sand and leaves.

Q. Basically down the right field foul line?

A. Yeah, along the pathway. So once it started to land, I really just watched. It was very noisy, and I was focused really on just that one helicopter and watching the helicopter come down. And then as it started to land and got close to the ground, because of the dust the fire fighters who were behind the dugout had actually waved people over to get out of the dust and the dirt and the sand and leaves.

Q. Over towards the dugout?

A. Over towards the dugout.

Q. This is the first base dugout?

A. First base dugout. That dugout was pretty much almost directly in front of me. I had stepped back. As opposed to getting out of the wind, I stepped back behind the building. That all happened in, you know, probably 15

A. That's correct.

Q. Do you know why he left Northeastern?

A. I do not. It's his by choice, by his decision. Gave him a big party.

MR. MAFFUCCI: That's all I have.

(Discussion of the record.)

(Exhibit No. 13A, field diagram, marked.)

Q. (By Mr. Maffucci) I'll show you Exhibit 13A, and tell us where you placed the location of the tables to the best of your ability and how you identified it?

A. I placed the location of the tables and chairs along the third base line, near third base along the foul line.

Q. And you marked it --

A. With a T.

<u>Re-examination by Ms. Hand</u>:

Q. Mr. Malone, my name is Kathryn Hand. I represent four fire fighters who are plaintiffs in this action. I just wanted to follow up a little bit on a couple of questions that came up today. Do you know one way or the

qualifications were before he began work on the project?

A. No.

Q. Two, after the accident on January 5th did anyone attempt to determine how the third base dugout had been attached to its foundation?

A. No.

Q. And then other than, obviously, cleaning up the dugout itself and replacing the dugout, was there any other damage to the Parsons Field complex after the rehearsal?

A. No.

Q. Did the pellets remain in place during the rehearsal?

A. Yes, they did.

MR. CONNELLY: I'm done.

MR. LUCEY: We are now concluded. Thank you.

(Whereupon, the deposition was concluded at 11:45 a.m.)