UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **FREDERICK BABCOCK, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No.  1:04-CV-11413-EFH |
| | ) | |
| v. | ) | consolidated with |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | 1:04-CV-12003-EFH |
| **et al.,** | ) | 1:04-CV-12647-EFH |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

The United States of America seeks Summary Judgment under Fed. R. Civ. P. 56 on all claims and cross-claims raised against it in these consolidated actions because, as a matter of law, the injuries sustained by the Plaintiffs were not a foreseeable consequence of, and were not proximately caused by, any acts or omissions of the Government's employees.  There was simply no way for the United States to know or suspect that mechanical fasteners concealed within the walls of the first base dugout at Northeastern University's Parsons Field had been improperly installed when the field was renovated months earlier, and that the dugout, therefore, would fall over on top of the Plaintiffs when a military helicopter approached its landing point near the base path between second and third base.

## PROCEDURAL BACKGROUND

The Plaintiffs, Frederick Babcock, Joseph Canney, Thomas Gregorio and John Kelley seek recovery for injuries sustained when a baseball dugout building fell over on top of them at Northeastern University's Parsons Field athletic complex on January 5, 2002. Babcock Dkt. No. 69, Plaintiffs' Third Amended Complaint. Plaintiff Yvonne Kelley seeks compensation for loss of consortium. *Id.* The Town of Brookline seeks to recover for sums paid to Plaintiffs Babcock, Canney, Gregorio and John Kelley for lost pay and medical expenses, as well as overtime expenses incurred while these firefighters were unable to work. Brookline Dkt. No. 1, Complaint. Defendants Ledgewood Construction Company, Northeastern University and Sasaki Associates, Inc. have filed cross-claims against the United States for contribution and indemnification. Babcock Dkt. Nos. 73, 74, and 86; Brookline Dkt No. 7.

## RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS OF RECORD

**I.   Parsons Field**

1.  Parsons Field is a combined baseball/football athletic complex located at the Brookline campus of Northeastern University. The football field forms the outfield for the baseball field. *See* Attachment A to United States of America's Motion for Summary Judgment ("Attachment A"), Deposition Exhibit No. 43D, Northeastern University Parsons Field Replacement, Layout Plan (authenticated in Attachment B, Deposition of John Hollywood, pp. 159:18 - 160:6).

2. Parsons Field was renovated in the summer of 2001.  During the renovation, the baseball dugouts were relocated.  Attachment A; Attachment C, Deposition of John Malone, v. I,  pp. 71:18 - 73:19.

3. The original dugout buildings consisted of wooden superstructures with asphalt shingle roofs resting on concrete walls and foundations set below grade.  *See* Attachment D, Deposition of Joseph Trainor, pp. 104:12 - 105:4; Attachment E, Deposition of PEDA by it designee David Donahue, v. I, p. 135:9-22.

4. During the 2001 renovation, the wooden superstructures of the original dugouts were retained and reused at new locations.  Attachment C, p. 143:6-14; Attachment F, Deposition Exhibit No. 5.

5. The renovated dugout buildings consisted of the original three-sided wooden superstructures which were attached to new low concrete block walls that had been set in mortar on top of new concrete pads.  Attachment G, Deposition Exhibit No. 26, Brookline Police Department Supplemental Report by Detective Barry S. McNeilly.

6. The horizontal bases of the dugouts measured roughly 40 feet by 8 feet. Attachment A.

7. The walls of the dugouts' wooden superstructures consisted of 2x4 framing covered on the outside by clapboard siding and on the inside by plywood paneling. Attachment H, Deposition of Split Boulder by its designee Paul S. Donahue, 5/25/2006, pp. 95:l8 - 96:17.

8. The dugout superstructures were attached to their respective concrete block walls with wedge anchors. Attachment E, pp. 196:2-10.

9. A wedge anchor is a mechanical fastener consisting of a bolt and metal sleeves that expand when the bolt is turned. *Id.* at 197:2-8 and 198:5-12; Attachment I, Deposition Exhibit No. 28.

10. In order to relocate the Parsons Field dugouts, a contractor removed a portion of the plywood paneling along the bottom edge of the dugouts' interior walls and removed the fasteners that had secured the dugouts to their original foundations. Attachment H, pp. 45:21 - 46:6, 95:11 - 96:17. The dugouts were then moved by crane to their new locations. *Id.* at 114:24 - 115:24. *See generally* Attachment T, Deposition Exhibit 30, Proposal of Split Boulder Construction, Inc. (authenticated at Attachment H, pp. 28:8 - 29:9).

11. Once the dugouts were set down on their respective concrete block walls, the contractor drilled through the horizontal plates, or sills, of the dugouts' wood framing and into the mortar that had been used to fill the cavities of the concrete blocks. Attachment G; Attachment H, pp. 60:7-20. The wedge anchors were then installed and the plywood paneling was reattached. Attachment H, pp. 64:20 - 65:4.

12. The wedge anchors used to attach the renovated dugouts were intended to be embedded at least two and one-half to three and one-half inches into the mortar

that filled the cavities in the concrete block walls. Attachment J, Deposition of Split Boulder by its designee Paul S. Donahue, 11/1/2006, p. 114:8-16

**II.     The Rehearsal**

13. On the evening of January 5, 2002, agents from the United States Secret Service and Marines from Marine Helicopter Squadron One (HMX-1) conducted a rehearsal landing at Parsons Field. The purpose of the rehearsal was to determine the suitability of Parsons Field as a landing site for a presidential visit. Plaintiffs' Third Amended Complaint, ¶¶ 20-21, Dkt No. 69.

14. The Brookline Fire Department ordered several of its units, including Ladder Company No. 2 (Ladder 2), to attend the rehearsal. Attachment K, Deposition of Michael J. O'Reilly, p. 24:4-22.

15. Plaintiffs Frederick Babcock, Joseph Canney, Thomas Gregorio, and John Kelly were assigned to Ladder 2 on January 5, 2002. Attachment K, p. 50:20-24.

16. At the rehearsal, the chief of the Brookline Fire Department, Chief John Spillane, ordered Ladder 2 to stage its rescue equipment near the first base dugout. Attachment K, pp. 16:13-17, 49:14 - 50:10.

17. The Brookline Fire Department administrative officer, Capt. Michael O'Reilly, advised the crew members of Ladder 2 to take shelter behind the first base dugout to avoid the wind generated by the helicopters during the rehearsal. Attachment K, pp. 106:10 - 107:19.

18. As the helicopters approached Parsons Field, the firefighters stood behind the first base dugout. Attachment L, Deposition of John Malone, v. II, pp. 244:23 - 245:18.

19. The first helicopter approached Parsons Field from the northeast on Kent Street, and proceeded across the football field to a landing point in shallow left field near the base path between second and third base near the shortstop position. Attachment L, pp. 241:10 - 242:24; Attachment K, pp. 112:15 -114:9; *see also* Attachment M, Deposition Exhibit No. 13A (identified in Attachment L, pp. 229:22 - 231:7, 271:7-8).

20. The helicopter's landing point was closer to the third base dugout than the first base dugout. Attachment K, p. 113:7-12.

21. As the helicopter approached its landing point, the wooden superstructure of the first base dugout separated from its foundation and fell over on top of the crew members of Ladder 2. Attachment K, p. 114:12 - 115:13.

22. Neither the third base dugout, nor any other portion of the Parsons Field complex, was damaged during the rehearsal. Attachment L, p. 279:8-12.

23. After the accident at Parsons Field, the Brookline Police Department conducted an investigation. Attachment G.

24. The police investigation revealed that none of the wedge anchors used to attach the first base dugout was embedded more than one and one-half inches into the mortar in the concrete block cavities. Several anchors were embedded even less. *Id.*

25. A visual inspection of the first base dugout prior to the accident would not have provided any reason to question the safety or integrity of the structure. Attachment N, Deposition of Northeastern University by its designee John Malone taken on behalf of Sasaki Assoc., pp. 48:12 - 49:13; *see also* Attachment O, Deposition of Northeastern University by its designee John Malone taken on behalf of Plaintiffs, pp. 16:5-22.

26. Captain Frederick Babcock joined the Brookline Fire Department in 1969. At the time of the accident, he was a senior fire captain in charge of Fire Station No. 1 consisting of Engine Company No. 1 and Ladder Company No. 2. Attachment P, Deposition of Frederick Babcock, pp. 8:24 - 9:22.

27. Firefighter Joseph Canney joined the Brookline Fire Department in 1983. Attachment Q, Deposition of Joseph Canney, pp. 13:18-20.

28. Firefighter John Kelley joined the Brookline Fire Department in 1976. Attachment R, Deposition of John Kelley, p. 14:3-5.

29. Firefighter Thomas Gregorio joined the Brookline Fire Department in 1975. Attachment S, Deposition of Thomas Gregorio, p. 10:9-18.

30. Captain Michael O'Reilly joined the Brookline Fire Department in 1980. He currently is the station commander for Fire Station No. 4. Attachment K, pp. 11:19 - 13:23.

**ARGUMENT**

Summary judgment is proper when the pleadings, admissions, depositions, affidavits and answers filed in the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Ward v. City of Boston* 367 F. Supp. 2d 7, 11-12 (D. Mass. 2005) *citing* Fed. R. Civ. P. 56(c). Not every factual controversy precludes the issuance of summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

Here, based on the undisputed material facts, the Parties cannot establish that the Plaintiffs' injuries were proximately caused by any act or omission of the United States. The first base dugout appeared to be a large, solid building firmly attached to a concrete foundation. There were no visible defects in the dugout's construction and there was no reason to suspect that the dugout could be blown over by a helicopter. Consequently, no rational factfinder could conclude that the Plaintiffs' injuries were reasonably foreseeable. In the absence of foreseeability, the Parties cannot establish negligence. Therefore, the United States is entitled to summary judgment.

**I.    MASSACHUSETTS LAW GOVERNS THIS CASE**

The Federal Tort Claims Act (FTCA) governs all claims against the United States in this action. 28 U.S.C. §§ 1346(b), 2671-2680. Under the FTCA, the liability of the United States is determined by the law of the state where the allegedly negligent act or omission occurred. *Richards v. United States*, 369 U.S. 1, 11 (1962). The acts which allegedly caused the Plaintiffs' injuries occurred in Massachusetts. *See* Plaintiffs' Third Amended Complaint, Dkt. No. 69. Therefore, Massachusetts law will govern the liability issues in this case.

In any negligence cause of action under Massachusetts law, a plaintiff "must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgenson v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990). "Under Massachusetts law, proximate cause requires a showing by the plaintiff, first, **that the loss was a foreseeable consequence of the defendant's negligence**, second, that the defendant's negligence was a but-for cause of the loss, and third, that the defendant's negligence was a substantial factor in bringing about the loss." *Id.* at 522-23 (emphasis added).

This Motion demonstrates the complete absence of material evidence to establish that any act or omission on the part of the United States was a proximate cause of the Plaintiffs' injuries.[1] Specifically, this Motion demonstrates the lack of evidence to

---

[1] The United States does not concede that there is sufficient evidence to
(continued...)

establish that the Plaintiffs' injuries were a foreseeable consequence of the actions of the employees of the United States.

## II. SUMMARY JUDGMENT IS APPROPRIATE IF FORESEEABILITY IS NOT ESTABLISHED

"Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur." *Jorgenson*, 905 F.2d at 523 (quotations omitted). A "court will not hold the defendant liable for all possible injury no matter how remote or farfetched." *Glick v. Prince Italian Foods Inc.*, 514 N.E.2d 100, 102 (Mass. App. 1987). Although the question of what is or is not reasonably foreseeable can be an issue to be decided by the finder of fact, "'there are instances when the judge may decide them as a matter of law, where no rational view of the evidence would warrant a finding of negligence.'" *Jorgenson*, 905 F.2d at 523 (quoting *Glick,* 514 N.E.2d at 102); *see also Hebert v. Enos,* 806 N.E.2d 452, 455 (Mass. App. Ct. 2004) (summary judgment is appropriate "if a plaintiff has no reasonable expectation of proving 'that the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct'") (quoting *Kent v. Commonwealth*, 771 N.E.2d. 770, 777 (Mass. 2002).

Indeed, Massachusetts courts have not been reluctant to enter a judgment for a defendant when the plaintiff's injuries were not foreseeable. *See e.g., Enos*, 806 N.E.2d at 822-823 (affirming summary judgment in favor of defendant/homeowner where

---

[1](...continued)
establish any of the elements of the tort of negligence in this case. The United States reserves its right to contest the Parties' proof regarding each element of the tort.

plaintiff/neighbor, who had come to water plants in defendant/homeowner's absence, was electrocuted when he touched the faucet for a garden hose); *Glick v. Prince Italian Foods of Saugus, Inc.* 514 N.E.2d 100, 102 (Mass. App. Ct. 1987) (affirming summary judgment in favor of defendant/restaurant where injuries of plaintiffs/patrons were caused by an out-of-control automobile that had crashed through restaurant's wall); *Ted's Master Serv. Inc. v. Farina Brothers Co.*, 178 N.E.2d 268 (Mass. 1961) (upholding directed verdict in favor of defendant who had no reason to anticipate that its pile-driving activities would have an adverse impact on buildings 60-70 feet away). Here, no rational view of the evidence would support the finding that the United States should have reasonably expected its helicopter to blow over a large wooden building that was apparently firmly attached to a concrete foundation.

### III.    THE UNITED STATES COULD NOT HAVE FORESEEN THE FAILURE OF THE FIRST BASE DUGOUT

Plaintiffs Babcock, Canney, Gregorio and John Kelley were injured when the superstructure of the first base dugout at Parsons Field fell over on top of them. The Parsons Field dugouts, however, appeared to be nothing other than solid, substantial structures. At the time of accident in January 2002, the baseball dugouts at Parsons Field were large wooden buildings attached to low concrete block walls that were laid on top of concrete pads. Fact No. 5. The footprint of the first base dugout measured **40 feet by 8 feet**. Fact No. 6. The wooden portions of the dugouts consisted of 2x4 framing covered by clapboard siding on the outside and plywood paneling on the inside. Fact No. 7. In

short, every visual clue suggested that the Parsons Field dugouts were large, heavy, wooden buildings that were firmly attached to concrete foundations. There was no apparent reason to suspect that either building could be blown over.

This view is buttressed by the actions of the Plaintiffs themselves. These experienced firefighters, who collectively had served over 100 years on the job, chose to stand behind the first base dugout. Fact Nos. 18, 26-29. The Fire Department's Administrative Officer, Capt. Michael O'Reilly, who himself had over 20 years of experience, had, in fact, advised the Plaintiffs to stand there in order to avoid the effects of the wind from the helicopter. Fact Nos. 17 and 30. Surely, the Plaintiffs would not have taken refuge behind the dugout, and Capt. O'Reilly would not have advised them to do so, if the dugout had appeared to be anything other than a strong and sturdy building.

Furthermore, blowing over wooden buildings attached to concrete foundations is not a reasonably foreseeable consequence of a helicopter landing, and the facts of this case prove this assertion. The helicopter landed closer to the third base dugout than the first base dugout. Fact No. 20. Nevertheless, the third base dugout was not blown over. Only the first base dugout was affected. In fact, no other portion of Parsons Field was damaged during the rehearsal. Fact No. 22.

That the Plaintiffs' injuries were not reasonably foreseeable is underscored by the fact that the undisputed evidence shows that the accident was caused by a hidden defect in the first base dugout. Defendants are not liable to plaintiffs whose injuries are caused by hazards that, as here, were hidden such that the defendants had no reasonable means of

-12-

discovering them. *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992) (a defendant "is not liable if it had no reasonable way of knowing about the hazard that caused the [plaintiff's] injury") (railroad not liable for employee's injuries caused by defective tool); *see also Brown v. CSX Transportation, Inc.*, 18 F.3d 245, 249-250 (4th Cir. 1994) (reversing jury verdict because plaintiff presented no evidence that railroad should have reasonably foreseen hidden defect in yard equipment); *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1062-64 (7th Cir. 1998) (affirming summary judgment because plaintiff failed to show that Amtrak knew of, or could have reasonably discovered, hidden defect in door that allegedly injured plaintiff).[2]

Here, no reasonable inspection by the Government's employees could have discovered the hidden defect in the construction of the first base dugout. The wooden superstructures of the Parsons Field dugouts were attached to their respective concrete block walls with wedge anchors that penetrated through the sills of the superstructures' walls and were embedded in mortar that had been used to fill the gaps in the concrete blocks. Fact No. 10. The wedge anchors were supposed to be embedded at least two and one-half to three and one-half inches in the mortar. Fact No. 12. None of the wedge

---

[2] These cases, decided under the Federal Employers' Liability Act (FELA), are nonetheless instructive because, in the absence of statutory language to the contrary, "the elements of a FELA claim are determined by reference to the common law." *Norfolk Southern Ry. v. Sorrell*, No. 05-746, 2007 WL 57176 at *5 (U.S. Jan. 10, 2007). FELA plaintiffs must still prove "the traditional common law elements of negligence including foreseeability." *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 3 (1st Cir. 1990) (affirming summary judgment because railroad could not have reasonably foreseen that employee would suffer heart attack as a result of unreported job stress).

anchors in the first base dugout was embedded more than one and one-half inches and several of those anchors were embedded even less. Fact No. 24. Because they were improperly installed, the wedge anchors were unable to keep the dugout from rocking back on its foundation and then falling over on top of the firefighters. *See* Attachment G. This defect could not have been detected through a visual inspection of the dugouts. Fact No. 25. The wedge anchors themselves were hidden behind the paneling and siding that covered the walls of the first base dugout. Fact No. 11.

In sum, there is no evidence to suggest that the United States should have reasonably expected the first base dugout to blow over during the rehearsal. Helicopters do not, in the ordinary course of events, blow over large, sturdy buildings attached to concrete foundations. Although the first base dugout was defective, the United States was not responsible for its hidden defect, and the defect could not have been discovered by the Government's employees through any reasonable means of inspection. Even the Plaintiffs, four very experienced firefighters, failed to notice the defect. Consequently, this accident was not reasonably foreseeable. *See Jorgenson*, 905 F.2d at 523. Because the injuries to the firefighters in this case could not have been reasonably foreseen, the United States cannot be held liable for them. The United States is therefore entitled to a grant of summary judgment in its favor on all claims.

## CONCLUSION

The injuries to the Plaintiffs could not have been foreseen prior to the accident. Therefore, no act or omission on the part of the United States could have been the proximate cause of the accident. The United States is entitled to summary judgment.

Dated: January 30, 2007

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        MICHAEL J. SULLIVAN
        United States Attorney

        BARBARA HEALY SMITH
        Assistant United States Attorney


        /s/ Matthew A. Connelly
        MATTHEW A. CONNELLY
        ASHLEY E. DEMPSEY
        Trial Attorneys
        Torts Branch, Civil Division
        U.S. Department of Justice
        P.O. Box 14271
        Washington, DC  20044-4271
        (202) 616-4040 (Connelly)
        (202) 616-4024 (Dempsey)
        (202) 616-4159 (fax)

        Attorneys for the
        United States of America

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing document were sent via an overnight delivery service, this 30th day of January 2007, addressed to the following counsel of record:

| | |
|---|---|
| Michael E. Mone, Esq.<br>Esdaile, Barrett & Esdaile<br>75 Federal Street<br>Boston, MA  02110 | John H. Bruno, Esq.<br>Masi & Bruno<br>124 Long Pond Road, Unit 11<br>Plymouth, MA  02360 |
| Joslin Murphy, Esq.<br>Associate Town Counsel<br>333 Washington Street<br>Brookline, MA  02445-6863 | Gerald F. Lucey, Esq.<br>Nelson, Kinder, Mosseau & Saturley, PC<br>45 Milk Street, 5th Floor<br>Boston, MA  02109 |
| David J. Hatem, Esq.<br>Deborah S. Russo, Esq.<br>Donovan Hatem LLP<br>Two Seaport Lane<br>Boston, MA  02210 | Terrence J. Hamilton, Esq.<br>Christopher Maffucci, Esq.<br>Casner & Edwards, LLP<br>303 Congress Street<br>Boston, MA  02210 |
| Jeffrey A. Gorlick, Esq.<br>Law Offices of Jeffrey A. Gorlick<br>One Longfellow Place, Suite 3409<br>Boston, MA  02114 | Brian C. Newberry, Esq.<br>Donovan Hatem LLP<br>Two Seaport Lane<br>Boston, MA  02210 |

 /s/ Matthew A. Connelly
MATTHEW A. CONNELLY