UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK BABCOCK, JOSEPH CANNEY, THOMAS GREGORIO, JOHN KELLEY and YVONNE KELLEY, <br>     Plaintiffs <br><br> v. <br><br><br> UNITED STATES OF AMERICA, NORTHEASTERN UNIVERSITY, LEDGEWOOD CONSTRUCTION COMPANY, INC., and SPLIT BOULDER CONSTRUCTION, INC., <br>     Defendants | C.A. NO. 04CV11413-EFH <br><br> *consolidated with* <br><br> C.A. NO. 04CV12647-EFH <br><br> *and* <br><br> C.A. NO. 04CV12003-EFH |
| NORTHEASTERN UNIVERSITY, <br>     Defendant, Third-Party Plaintiff <br><br> v. <br><br> PEDA, INC., <br>     Third-Party Defendant/Defendant <br>     In Crossclaim | |
| SPLIT BOULDER CONSTRUCTION, INC., <br>     Defendant, Third-Party Plaintiff, <br><br> v. <br><br> SASAKI ASSOCIATES, INC., <br>     Third-Party Defendant/Defendant <br>     In Crossclaim | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(f) FOR CONTINUANCE ON DEADLINE FOR FILING OPPOSITION TO DEFENDANT, UNITED STATES <u>OF AMERICA'S MOTION FOR SUMMARY JUDGMENT</u>**

1

This is an action of tort arising out of an accident on January 5, 2002 when four plaintiffs, Frederick Babcock, John Kelley, Thomas Gregorio and Joseph Canney, were injured in the line of duty as firefighters for the Town of Brookline.  The fifth plaintiff, Yvonne Kelly, has a loss of consortium claim as a result of the injuries sustained by her husband.  At the time of the accident, Babcock, Kelley, Gregorio and Canney were assigned to a station at Northeastern University's Parsons Field in Brookline, MA where a military helicopter landing drill was to take place.  The landing drill was being conducted as a military rehearsal for the arrival of President Bush on Monday, January 8, 2002.  Just prior to the accident, the firefighters were instructed to stand behind the baseball dugout as the helicopters landed, to protect themselves from the rotorwash created by the helicopters.  As the helicopters approached, the force of the rotorwash blew over the dugout, which landed on the firefighters, pinning them and causing injuries.

Suit was commenced on June 22, 2004, and the parties in this case have conducted extensive discovery and taken numerous depositions.  The current deadline for completion of depositions is March 15, 2007.

On or about January 30, 2007, the United States of America filed a Motion for Summary Judgment claiming that "the injuries sustained by the Plaintiffs were not a foreseeable consequence of, and were not proximately caused by, any acts or omissions of the Government's employees."  See, United States of America's Motion for Summary Judgment, p. 1.

Federal Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) "describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." Resolution Trust Corporation v. North Bridge Associates, Inc., et. al., 22 F3d 1198, 1203, 1994 U.S. App. LEXIS 9358, 28 Fed. R. Serv. 3d (Callaghan) 1490. "The rule is intended to safeguard against judges swinging the summary judgment axe too hastily." Resolution Trust, supra, at 1203.

Under Rule 56(f), a party seeking deferral must:

1. make a timely proffer;

2. show good cause for the failure to discover the essential facts sooner;

3. present a plausible basis for its belief that facts exist that would likely raise a genuine and material issue, and,

4. show that the facts are discoverable within a reasonable amount of time.

See, Town of Sturbridge v. Mobil Corporation, et. al., 195 F.Supp. 2d 330, 337, 2002 U.S. Dist. LEXIS 6912.

## ARGUMENT

### 1. The proffer is timely.

Discovery is still open. Several of the key witnesses' depositions are scheduled within the next several weeks, during a time when discovery is still permissible.

2. <u>The plaintiffs have good cause for not discovering the essential facts sooner</u>.

As stated above, discovery is still open. Furthermore, it is the plaintiffs' position that the reason the depositions have not yet taken place have less to do with the plaintiffs or the other defendants, but rather that the United States has failed to make witnesses available in a timely manner and/or has failed to produce appropriate witnesses competent to testify on particular areas. See Affidavit of Rhonda T. Maloney, counsel for the plaintiffs, attached hereto as Exhibit 1.

The Court must not render all upcoming testimony moot by ruling on a Motion for Summary Judgment at this time, particularly since discovery is still open and a large portion of the delay in completing these depositions is due to the United States itself.

3. <u>Facts exist that would likely raise a genuine and material issue.</u>

Of course, under Massachusetts law, a defendant can be found liable for violation of a duty owed to a plaintiff only when the risk of injury stemming from the defendant's conduct was foreseeable. <u>Jorgensen v. Massachusetts Port Authority</u>, 905 F.2d 515. In order to prove whether the injuries of the plaintiffs were a foreseeable consequence of the defendant's actions or inactions, the plaintiff need not show that particular harm that resulted was foreseeable to the defendant, but that the harm of the same general character was a foreseeable result of the defendant's conduct. <u>Jorgensen</u>, <u>supra</u>. In deciding on reasonable foreseeability of harm, all circumstances are examined. <u>Flood v. Southhland Corp</u>., 616 N.E.2d 1068, 416 Mass. 62, appeal after remand 1996 WL 42327.

Using this analysis, whether the risk of the dugout blowing over as a result of rotorwash is foreseeable can be proved in various ways. Of course, discovering the

4

knowledge of those responsible for the planning and execution of the event is one of the most important facets of any trial preparation. In this case, there are at least four currently scheduled depositions of key witnesses who are expected to testify about the suitability of Parsons Field as a landing site. A fifth witness's deposition has been noticed, but has not yet been scheduled until his deployment status in Iraq is more clear, and a sixth witness's address is the subject of a pending Motion for Court Order, as the United States has yet to reveal this retired employee's address, citing Privacy Act restrictions. These six witnesses are:

<u>Kim Kimball -- White House Advance Lead</u>

Kim Kimball has been identified by Special Agent Jenkins as the representative of the White House with knowledge as to the White House's decision to use Parsons Field as opposed to other landing sites.

<u>Ernest Silva --White House Advance</u>

According to the United States' Answers to Interrogatories of the Plaintiff, Mr. Silva was a member of the White House Advance Team and was present at the January 4, 2002 walk-through inspection of Parsons Field, together with representatives of the Marine Corps and Northeastern University. According to the United States' Answers to Interrogatories, during this walk-through, there was discussion concerning several items that may be affected by the expected rotorwash, including the dugouts. In addition, the United States has disclosed in Answers to Interrogatories that, on the date of the incident, Mr. Silva noticed that the firefighters were standing behind a cyclone fence and that he advised them to move further back from the field to avoid the effects of rotorwash.

5

Kerry O'Grady -- Secret Service Special Agent

SA O'Grady has been identified by the United States as having met with representatives of Northeastern University and the Town of Brookline prior to the rehearsal, and as having been present at Parsons Field on January 5, 2002 informing bystanders about rotorwash. She has also been identified by Northeastern University as having met with representatives of Northeastern prior to the accident to discuss the potential landing at Parsons Field, and she was identified by Special Agent Jenkins as having been present at the Field conducting her advance of the site on January 3, 4 and 5, 2002.

Major Clay Stackhouse -- U.S. Marine Corps

Major Stackhouse has been identified by the United States as the 30(b)(6) designee to testify as to Items 1 through 8 of the deposition notice which has been marked as Exhibit 68 in this matter, attached hereto as Exhibit 2. Of particular note, those areas of inquiry included:

1. All aspects of the decision-making process regarding the choice of Northeastern University's Parsons Field as the landing site…

2. All aspects involving the decision-making process regarding the choice of helicopter to use at Northeastern University Parsons Field…

3. Any information regarding prior incidents involving physical injury to ground crews during test landings and live landings…

4. Any information regarding any prior site inspections of Northeastern University's Parsons Field by the United States or any of its agents regarding the suitability of the field as a potential landing site, any alternative sites proposed and the extent to which any inspection included the dugouts.

Furthermore, the United States has identified Major Stackhouse as being present at an inspection of Parsons Field on January 4, 2002 with CWO5 Seagle and

6

Northeastern University's Vice President of Government Relations & Community Affairs Thomas Keady. A physical inspection was performed, and the United States has disclosed that a conversation took place in which the impact of rotorwash on the area was raised. The plaintiffs have not yet had an opportunity to question Major Stackhouse on these key areas.

### CWO5 George H. Seagle -- Retired

At the time of the accident, CWO5 Seagle was the White House Liaison Officer at the landing zone where the accident occurred. He was one of the military personnel to inspect the site prior to the accident. He was present with Major Stackhouse on January 4, 2002, with representatives of Northeastern University, when the impact of rotorwash on the area was discussed. The United States has indicated in its Answers to Interrogatories that CWO5 Seagle visually inspected the dugouts prior to the accident and "dismissed it as a potential safety hazard." The United States has also disclosed that on January 5, 2002, CWO5 Seagle noted press risers in the area between home plate and the pitchers mound, asked that the pilots adjust their original landing points and fastened the risers together to keep them from becoming airborne during landing. He was the only one on the field as the helicopters approached, was the only one at the scene capable of getting communication to the helicopter pilots as they attempted to land. Further, CWO5 Seagle directed others at the scene where to remain while the helicopters landed. After the accident, he is one of several federal personnel to inspect the dugout and the manner in which it had, or had not been, secured to its foundation.

### Thomas Keady -- Former Vice President of Government Relations & Community Affairs of Northeastern University

Mr. Keady has been identified by Northeastern as the contact person with regard to the proposed Presidential visit on January 8, 2002.  He had discussions with the government beginning in late 2001 concerning the selection of Parsons Field for this exercise.  The United States has identified Mr. Keady as having been present at a walk-through inspection on January 4, 2002 with Major Stackhouse and CWO5 Seagle.

4.   <u>Facts are discoverable within a reasonable amount of time.</u>

Kim Kimball's deposition was scheduled for February 13, 2007, but due to a conflict of one party's counsel, it is now being rescheduled to a date within the next several weeks.

Mr. Silva's deposition is currently scheduled for February 27, 2007.

The United States has agreed to produce Special Agent O'Grady for deposition in Washington, DC.  The parties are currently attempting to coordinate dates for the depositions of Major Stackhouse, CWO5 Seagle and SA O'Grady, all in Washington, DC, within the next several weeks.

Major Stackhouse is believed to have been on recent deployment in Iraq.  The United States has agreed to produce him for deposition as soon as is practicable, which is anticipated to be sometime in February, 2007.

The plaintiffs have noticed the deposition of CWO5 Seagle, who is, on information and belief currently retired and no longer a government employee.  However, citing the constraints of the Privacy Act, the United States has not produced Mr. Seagle's last known address for service of process, and the plaintiffs have therefore not been able to serve Mr. Seagle with a deposition subpoena.  The production of his last known address is the subject of a current Motion filed with the United States District Court.

Mr. Keady's deposition is currently scheduled for February 27, 2007.

CONCLUSION

The observations and actions of these witnesses on the days prior to the accident and on the day of the accident itself are highly relevant and crucial to proper preparation of this case. More specifically, their actions and inactions on the date of the accident and days prior thereto bear directly on the issue of foreseeability, which is the subject of the defendant's Motion for Summary Judgment. In order to allow the plaintiffs an opportunity to complete discovery on these crucial matters, particularly since the discovery phase of this case is still open, the plaintiffs pray that the Court at this time, in accordance with Rule 56(f) of the Federal Rules of Civil Procedure, "refuse the application for judgment or…order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had[.]"

          Respectfully submitted,

          FREDERICK BABCOCK, JOSEPH CANNEY, THOMAS GREGORIO, JOHN KELLEY and YVONNE KELLEY

          By their attorney,

          /s/ Rhonda T. Maloney
          Rhonda T. Maloney
          BBO NO. 49519
          ESDAILE, BARRETT & ESDAILE
          75 Federal Street
          Boston, MA  02110
          (617) 482-0333

Dated:  February 7, 2007

## CERTIFICATE OF SERVICE

I, Rhonda T. Maloney, attorney for the Plaintiffs, hereby certify that on this day I served a copy of the attached Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(f) for Continuance on Deadline for Filing Opposition to Defendant United States of America's Motion for Summary Judgment and Memorandum in Support of Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(f) for Continuance on Deadline for Filing Opposition to Defendant United States of America's Motion for Summary Judgment  by mailing a copy thereof, first class, postage prepaid, to:

Brian C. Newberry, Esq.
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210

Gerald F. Lucey, Esq.
Nelson, Kinder, Mosseau & Saturley, P.C.
5th Floor, 45 Milk Street
Boston, MA 02109

Joslin Ham Murphy, Esq.
Town of Brookline
Town Hall
333 Washington Street
Brookline, MA 02445

Matthew A. Connelly, Esq.
US Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, DC 20044

John H. Bruno, Esq.
Masi & Bruno
124 Long Pond Road
Plymouth, MA 02360

Christopher P. Maffucci, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

Jeffrey A. Gorlick, Esq.
Law Office of Jeffrey A. Gorlick
One Longfellow Place
Suite 3409
Boston, MA 02114

Alberto G. Rossi, Esq.
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA  02210


/s/ Rhonda T. Maloney
Rhonda T. Maloney

DATED:  February 7, 2007