# EXHIBIT M

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK BABCOCK, et al. | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. NO. 04CV11413-EFH<br>)   and consolidated cases |
| UNITED STATES OF AMERICA,<br>et al. | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**UNITED STATES OF AMERICA'S RESPONSE TO
LEDGEWOOD CONSTRUCTION COMPANY, INC.'S
FIRST SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA**

The United States of America responds to Ledgewood Construction Company, Inc.'s First Set of Interrogatories to the United States of America by providing its responses and raising its general and specific objections. Because discovery is continuing, the United States reserves the right to supplement its responses, if necessary.

**General Objections**

The following general objections apply to all interrogatories individually. The United States of America's responses are made without waiving, and subject to, these general objections.

1.   The United States objects to each interrogatory to the extent that it seeks discovery of sensitive national security information regarding the procedures and methods for protecting and/or transporting the President of the United States. Disclosure of such information, even to a limited extent, endangers the safety of the President and places national security at risk.

2. The United States objects to each interrogatory to the extent that it seeks disclosure of information protected by the law enforcement privilege.

3. The United States objects to each interrogatory to the extent that it seeks discovery of information that is not relevant to the limited scope of the allegations contained in either the Plaintiffs' Complaint or any cross-claim.

## DEFINITIONS

The following definitions apply to these Responses:

ASAIC - Assistant Special Agent in Charge

ATSAIC - Assistant to the Special Agent in Charge

PSS - Physical Security Specialist

SA - Special Agent

## INTERROGATORIES

1. State the full name, permanent residential address, business address, and position held of the person(s) answering these interrogatories on behalf of the United States.

**RESPONSE:** Current employees identified in connection with specific interrogatory responses participated in, or were consulted in connection with, answering the interrogatories. Any communication with any such employees regarding this litigation can be made through the counsel representing the United States in this matter.

2. Identify all persons who participated in or were consulted in connection with answering these interrogatories.

**RESPONSE:** See the response to Interrogatory 1.

2

3.  Identify all individuals who have, or who are believed to have, knowledge of any discoverable matters pertaining to the allegations in the Complaint, including but not limited to any Counterclaims, Cross-claims and/or Third Party Claims, and with respect to each such person, describe the general nature and extent of his/her knowledge.

**RESPONSE:** Objection. Interrogatory No. 3 is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures. Additionally, the following Secret Service employees either attended the rehearsal on January 5, 2002 or visited Parsons Field earlier in anticipation of that event.

    a.    ATSAIC Kenneth Jenkins

    b.    ATSAIC Kerry O'Grady

    c.    SA Vincent Stofa

    d.    SA David Murray

    e.    ATSAIC Robert Kierstead

    f.    Officer Mark Sedlak

    g.    ATSAIC Tyler McQuiston

    h.    SA Joseph Freyre

    i.    SA William Buckner

    j.    SA Luis Velez

    k.    PSS Darrel Richardson

    l.    PSS Michael Wallis

4. With reference to each and every defense and affirmative defense of the United States:

    (a) State the factual basis for the defense;

    (b) Identify all persons who have personal knowledge of those facts supporting the defense; and

    (c) State the date and set forth the description of any documents which support the defense.

**RESPONSE:** Objection. The United States objects to Interrogatory No. 4 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 4 is also overbroad, constitutes more than one interrogatory and is premature as discovery is ongoing. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures. Additionally, the United States notes the following:

    a. The Court has no jurisdiction over any claims or cross-claims against the United States Navy. 28 U.S.C. § 2679(a); <u>Quinones v. Department of Health and Human Services</u>, 322 F. Supp. 2d 147, 151 (D.P.R. 2004).

    b. To the extent that any claim or cross-claim against the United States is premised upon a government employee's "exercise or performance or the failure to exercise or perform a discretionary function or duty," such claim or cross-claim is also barred. 28 U.S.C. § 2680(a).

    c. It is clear from the investigative report of Brookline Police Detective Barry S. McNeilly that the wooden superstructure of the first base dugout was improperly attached to its cinder block foundation. Any person or entity that

        designed, supervised or carried out the installation of that superstructure acted negligently and such negligence was the cause of the Plaintiffs' injuries.

d.    The negligent installation of the first base dugout was undetectable by either the United States or its employees. The consequences of that negligence, the injuries to the Plaintiffs, were unforeseeable. Hence any alleged breach of duty on the part of the United States was not a proximate cause of the Plaintiffs' injuries.

e.    To the extent that the Plaintiffs, or their employers, failed to heed warnings, and/or obvious risks, and placed the Plaintiffs too close to the landing site, the Plaintiffs, or their employers, are at least partially responsible for their own injuries and any award to either the Plaintiffs, or their employers, must be reduced accordingly.

f.    The Plaintiffs are not entitled to a double recovery. To the extent allowed by state and federal law, the United States is entitled to set off any monies the Plaintiffs have received, or will receive, from pensions or other collateral sources against any final award in this case.

5.  With reference to each and every claim asserted by Defendant/Cross-claimant the United States or Defendant/Third-Party Plaintiff United States:

    (a) State the factual basis for each claim;

    (b) Identify all persons who personal knowledge of those facts supporting the claim(s); and

    (c) State the date and set forth the description of any documents which support the claim(s).

**RESPONSE:** The United States has not asserted any cross-claims or third-party claims at this time.

6.  Do you allege or contend that Ledgewood was negligent or is in any way responsible for the damages claimed by the Plaintiffs in their Complaint?

**RESPONSE:** If Ledgewood designed, supervised, carried out or otherwise participated in the installation of the first base dugout, then Ledgewood was actively negligent and at least partially responsible for the damages claimed by the Plaintiffs in their Complaint.

7.  If your answer to the preceding interrogatory is other than an unqualified "no", state:

    (a) the nature of your contention or allegation (negligence, duty of care or some other failure);

    (b) each fact upon which you rely for each said item listed in part (a) of the interrogatory;

    (c) if you allege any violation of any statute, regulation, rule, standard or guideline, please identify the same and the manner in which the violation

occurred;

(d) the name and address of each person having knowledge of each item listed in part (a) of this interrogatory;

(e) a description by title, date, author, and other identifying information of each document upon which you rely for each said allegation or contention listed in part (a) of this interrogatory; and

(f) the name and current address of the custodian of each document listed in part (e) of this interrogatory.

**RESPONSE:** Objection. The United States objects to Interrogatory No. 7 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 7 is also overbroad, constitutes more than one interrogatory, and is premature as discovery is ongoing. Without waiving either these specific objections, or the general objections, and subject to them, please see the Response to Interrogatory No. 6 and the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.

8. Do you allege or contend that the Town of Brookline was negligent or is in any way responsible for the damages claimed by the Plaintiffs in their Complaint?

**RESPONSE:** In their statements to the Brookline Fire Department, the Plaintiffs assert that they were placed close to the landing site by their supervisors. If those assertions are true, then those supervisors ignored the obvious risks associated with normal helicopter operations, and the Town of Brookline may have been actively negligent and at least partially responsible for the damages claimed by the Plaintiffs in their Complaint.

7

9. If your answer to the preceding interrogatory is other than an unqualified "no", state:

   (a) the nature of your contention or allegation (negligence, duty of care or some other failure);

   (b) each fact upon which you rely for each said item listed in part (a) of the interrogatory;

   (c) if you allege any violation of any statute, regulation, rule, standard or guideline, please identify the same and the manner in which the violation occurred;

   (d) the name and address of each person having knowledge of each item listed in part (a) of this interrogatory;

   (e) a description by title, date, author, and other identifying information of each document upon which you rely for each said allegation or contention listed in part (a) of this interrogatory; and

   (f) the name and current address of the custodian of each document listed in part (e) of this interrogatory.

**RESPONSE:** Objection. The United States objects to Interrogatory No. 9 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 9 is also overbroad, constitutes more than one interrogatory, and is premature as discovery is ongoing. Without waiving either these specific objections, or the general objections, and subject to them, please see the Response to Interrogatory No. 8 and the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.

8

10. Do you allege or contend that Northeastern was negligent or is in any way responsible for the damages claimed by the Plaintiffs in their Complaint?

**RESPONSE:** If Northeastern designed, supervised, carried out or otherwise participated in the installation of the first base dugout, then Northeastern was actively negligent and at least partially responsible for the damages claimed by the Plaintiffs in their Complaint.

11. If your answer to the preceding interrogatory is other than an unqualified "no", state:
    (a) the nature of your contention or allegation (negligence, duty of care or some other failure);
    (b) each fact upon which you rely for each said item listed in part (a) of the interrogatory;
    (c) If you allege any violation of any statute, regulation, rule, standard or guideline, please identify the same and the manner in which the violation occurred;
    (d) the name and address of each person having knowledge of each item listed in part (a) of this interrogatory;
    (e) a description by title, date, author, and other identifying information of each document upon which you rely for each said allegation or contention listed in part (a) of this interrogatory; and
    (f) the name and current address of the custodian of each document listed in part (e) of this interrogatory.

**RESPONSE:** Objection. The United States objects to Interrogatory No. 11 to the extent that it seeks information protected by the attorney-client and attorney work-product

privileges. Interrogatory No. 11 is also overbroad, constitutes more than one interrogatory, and is premature as discovery is ongoing. Without waiving either these specific objections, or the general objections, and subject to them, please see the Response to Interrogatory No. 10 and the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.

12.   If the United States, its agents, servants, employees, or other of its representatives has had any communications with the plaintiffs, its agents, servants, employees or other of its representatives with respect to any aspect of the Accident which is the subject of this litigation set forth:

    (A)   The date, time, place and manner of the communication;

    (B)   The identities by name, address, and telephone number of all persons who were present and/or parties to the communication; and

    (C)   The substance of any and all such communication.

**RESPONSE:**   Objection. The United States objects to Interrogatory No. 12 to the extent that it seeks information protected by the attorney work-product privilege. Interrogatory No. 12 is also overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery. Additionally the United States notes the following:

    a.   ATSAIC Robert Kierstead, of his own accord, visited the fire station on January 6, 2002 and was introduced to firefighter Joseph Canney. Mr. Canney informed ATSAIC Kierstead that one of his legs was injured from having the dugout

10

fall on top of him. They also talked about mutual acquaintances they had in the greater Boston area. In March 2002, Mr. Canney telephoned ATSAIC Kierstead when he visited Washington, D.C., and asked if he and his friends could get a White House tour. ATSAIC Kierstead informed Mr. Canney that no tours were available during the time of his visit. Mr. Canney asked ATSAIC Kierstead if he wanted to join him at a D.C. bar for a beer, and ATSAIC Kierstead informed him that he had to travel out of town on a work assignment.

b.     PSS Darrel Richardson went to Brigham and Women's hospital to visit a relative there and saw one of the firefighters in the emergency room the evening of the accident with a pelvic injury. He believes that another individual from the Secret Service was also there, but cannot recall who it was. He believes that he may have briefly said something to the injured firefighter, but cannot recall what was said.

c.     SA Dave Murray was sent by the Special Agent in Charge of the Boston Field Office to go to one of the hospitals and check on the status of the firefighters. He does not recall speaking directly to any of the firefighters or their families.

d.     Former SA William Cameron may also have checked on the status of the firefighters, but it is unclear whether he had any communications directly with the firefighters; he has since retired from the federal government and did not participate in preparing this response. SA Gregory Stokes provided this information.

e.     Former ASAIC Mark Carleton and former ATSAIC John Rodriguez may also have gone to the hospital to check on one of more of the firefighters, but it is unclear whether either had any communications directly with the firefighters. Neither of these individuals are still with the federal government, and did not participate in preparing this response. ASAIC David Curran provided this

11

information.

13. If the United States, its attorney, or anyone acting on its behalf had any conversation with any agent, servant or employee of Ledgewood, Split Boulder, Sasaki, the PEDA, Town of Brookline, Commonwealth of Massachusetts and/or Northeastern concerning the Accident or concerning related events prior or subsequent thereto, state:

    (A) The identity of the agent, servant or employee of the party (specifying which party);

    (B) The date and place of any such conversation;

    (C) The substance of any such conversation.

**RESPONSE:** Objection. The United States objects to Interrogatory No. 13 to the extent that it seeks information protected by the attorney work-product privilege. Interrogatory No. 13 is also overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery. Additionally the United States notes the following:

Then-SA Kerry O'Grady met with Northeastern University and Brookline Police Department representatives (identities unknown) in the days prior to the rehearsal to discuss security procedures. Those representatives may have participated in one or more walk-throughs of the Parsons Field site also attended by Secret Service personnel. SA Vincent Stofa may have spoken to local police department representatives and/or Brookline Fire Department representatives in the several days prior to the rehearsal regarding meeting logistics, but does not recall specifics. PSS Darrel Richardson believes

he may have spoken to one or more members of the Brookline Fire Department prior to the day of the accident regarding the rehearsal, and may have introduced himself as a Technical Security Division (TSD) representative to one or more of the firefighters at the rehearsal. PSS Richardson also recalls making a comment about rusted rebar around the dugout to an individual who may have worked for Northeastern University (identity unknown) after the accident had occurred.

14.     Identify each and every document within the possession of the United States, its agents, servants, employees, or other of its representatives which directly or indirectly relates to the Accident which is the subject of this litigation. Include in your description:

    (A)    The date of the document;

    (B)    The type of document;

    (C)    Who prepared the document;

    (D)    When it was prepared;

    (E)    When and to whom it was delivered;

    (F)    The present location of the original or copy of the document;

    (G)    The name, address, employer and job title or position of the person having custody of such document; and

    (H)    The substance of any and all such communications.

**RESPONSE:**     The United States objects to Interrogatory No. 14 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 14 is also vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United

States of America's responses to all previously served discovery, as well as its Initial Disclosures.

15. State the name and address of all witnesses to the Accident and identify all witnesses from whom the United States, its agents, servants, employees, or other of its representatives, received any statement including in your answer the witness's name, the witness's employer's name, home and work addresses, home and work telephone numbers and the date on which the statement was obtained.

**RESPONSE:** The United States objects to Interrogatory No. 15 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 15 is also vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.

16. If you expect to call any person as an expert witness at the trial of the case, kindly state:

    (a)    the name and address of each person whom you expect to call as an expert witness at trial;

    (b)    The substance of the facts and opinion to which any expert is expected to testify:

    (c)    the substance of the facts and opinions to which each expert is expected to testify and a summary of the grounds for each such opinion; and

14

    (d)    the formal education (including the college and post-graduate education) of each such expert, each job or position such person has held in her area of expertise and the dates of such employment, membership in professional societies of each such expert, and identify all publications of each such expert in her field of expertise.

**RESPONSE:** Objection. Interrogatory No. 16 is unduly burdensome and premature. The United States will make its expert witness disclosures in accordance with Fed. R. Civ. P. 26 at the time prescribed by that rule or on a date mutually acceptable to all parties.

17. State whether the United States, its agents, servants, employees, or other of its representatives, made a written, oral or recorded report of the Accident to any person or organization (other than your attorney), and if so, state:

    (A)    The name and address of each person or organization to whom or to which any such report was made;

    (B)    Describe the general contents of any and all such reports.

**RESPONSE:** The United States objects to Interrogatory No. 17 to the extent that it seeks information protected by the attorney-client and attorney work-product privileges. Interrogatory No. 17 is also vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving either these specific objections, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.

18. If the United States, its attorney, or anyone acting on its behalf has any photographs of the Project, the Dugouts, Parsons Field, the scene of the Accident, or of any object involved in the accident, state:

   (A) A description of any and all such photographs; and

   (B) The name and address of the person or persons having custody of each such photograph.

**RESPONSE:** The United States objects to Interrogatory No. 18 to the extent that it seeks information protected by the attorney work-product privilege. Without waiving either this specific objection, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures.


19. Please describe in detail what the United States did in order to obtain permission for the Rehearsal Landing.

**RESPONSE:** Objection. Vague. Without waiving either this specific objection, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures. The United States is still investigating this issue and will supplement its Response if necessary.

20. Please describe what policies, procedures and/or manuals the United States followed or relied on in selecting Parsons Field for the Rehearsal Landing.

**RESPONSE:** Objection. Vague. Without waiving either this specific objection, or the general objections, and subject to them, please see the United States of America's responses to all previously served discovery, as well as its Initial Disclosures. The United States is still investigating this issue and will supplement its Response if necessary.

Dated: June 13, 2005

                                        Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

BARBARA HEALY SMITH
Assistant United States Attorney

MATTHEW A. CONNELLY
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC  20044-4271
(202) 616-4040
(202) 616-4159 (fax)

Attorneys for the
United States of America

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of United States of America's Response to Ledgewood Construction Company, Inc.'s First Set of Interrogatories to the United States of America were placed in the U.S. mail, postage pre-paid, this 13th day of June, 2005, addressed to the following counsel of record:

Michael E. Mone, Esq.
Esdaile, Barrett & Esdaile
75 Federal Street
Boston, MA  02110

Joslin Murphy
Associate Town Counsel
333 Washington Street
Brookline, MA 02445-6863

David J. Hatem, Esq.
Warren D. Hutchinson, Esq.
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210

Jeffrey A. Gorlick, Esq.
Law Offices of Jeffrey A. Gorlick
One Longfellow Place, Suite 3409
Boston, MA 02114

John H. Bruno, Esq.
Masi & Bruno
124 Long Pond Road, Unit 11
Plymouth, MA  02360

Gerald F. Lucey, Esq.
Nelson, Kinder, Mosseau & Saturley, PC
45 Milk Street, 5th Floor
Boston, MA  02109

Terrence J. Hamilton, Esq.
Christopher Maffucci, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210

MATTHEW A. CONNELLY