UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FREDERICK BABCOCK, JOSEPH CANNEY, THOMAS GREGORIO, JOHN KELLEY and YVONNE KELLEY<br><br>    Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA, and LEDGEWOOD CONSTRUCTION COMPANY, INC.<br>    Defendants,<br><br>NORTHEASTERN UNIVERSITY, and SPLIT BOULDER CONSTRUCTION, INC.,<br>    Defendants/Third Party Plaintiffs,<br>v.<br>PEDA, INC., and SASAKI ASSOCIATES, INC.,<br>    Third Party Defendants.<br><br>SPLIT BOULDER CONSTRUCTION, INC.,<br>    Defendant, Third-Party Plaintiff,<br>v.<br>SASAKI ASSOCIATES, INC.,<br>    Third-Party Defendant/Defendant In Crossclaim. | Consolidated C.A. No.:<br>04-CV-11413-EFH |

**SASAKI ASSOCIATES, INC.'S MEMORANDUM OF LAW IN OPPOSITION
TO USA'S MOTION FOR SUMMARY JUDGMENT**

Defendant Sasaki Associates, Inc. ("Sasaki), pursuant to Fed. R. Civ. P. 56, respectfully submits this memorandum in opposition to the United States of America's ("USA") motion for summary judgment in the above-captioned matter. Sasaki respectfully requests that this Court deny the USA's motion for summary judgment because there are genuine issues of material fact in dispute, including: (1) whether it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge a wooden baseball dugout from its foundation during a Presidential rehearsal landing on Northeastern University's Parsons Field, resulting in injuries to

1

bystanders; and (2) whether the dislodged wooden baseball dugout was constructed defectively, as alleged by the USA in its motion. Further, pursuant to Fed. R. Civ. P. 56(f), Sasaki objects to the USA's motion as premature because discovery is still ongoing. Notwithstanding Sasaki's Fed. R. Civ. P. 56(f) objection, Sasaki believes that the Court has before it more than enough evidence of disputed material facts to deny the USA's Motion for Summary Judgment.

## I.  PROCEDURAL BACKGROUND

The plaintiffs in this action filed suit on June 22, 2004 for injuries allegedly sustained when they were hit by a wooden baseball dugout dislodged from its foundation by rotor wash[1] from a Chinook-47D helicopter landing on Parsons Field in Brookline, Massachusetts. See Docket No. 1. Initially, Sasaki was released by the plaintiffs via a Stipulation of Dismissal Without Prejudice. See Docket No. 15. Based upon erroneous deposition testimony by the Town of Brookline, the veracity of which Sasaki adamantly denies, defendant Split Boulder Construction, Inc. ("Split Boulder") filed a Third-Party Complaint against Sasaki on June 20, 2006. See Docket No. 65. The plaintiffs then amended their Complaint to add cross-claims against Sasaki. See Docket No. 69. Sasaki filed an Answer to the Plaintiffs' Third Amended Complaint and asserted cross-claims against the USA, among others, for contribution and indemnification. See Docket No. 81.

On January 30, 2007, the USA filed a motion for summary judgment against Sasaki and other defendants, alleging that the injuries sustained by the plaintiffs were unforeseeable. See Docket No. 95. As discussed below, the question of foreseeability is normally a question for the trier of fact to resolve, since it is highly dependent upon the resolution of disputed material facts. This case is no exception. The USA's motion for summary judgment should be denied.

---

[1] Rotor wash is wind generated by the rotors of a helicopter. **Exhibit J**, at 24:17-25:1-2.

2

## II.     FACTUAL BACKGROUND

### A.     Disputed Material Facts Regarding Foreseeability

The USA bases much of its argument on the "fact" that the wooden dugouts that hit the plaintiffs were large, heavy buildings one would not expect to dislodge even during a helicopter landing. For purposes of deciding the USA's motion for summary judgment, the court does not need to decide whether or not this assertion is correct. The court needs only to realize that there are numerous facts that are completely inconsistent with the USA's assertion.

The baseball dugouts were on grade, in other words, level with the turf on Parsons Field, made entirely of wood except for the concrete foundation to which they were secured by wedge anchors. **Exhibit A**[2], at 24:6-25:2; **Exhibit B**, at 210:10-212; Memorandum of Law in Support of the United States of America's Motion For Summary Judgment ("USA Memo of Law"), at 3-4, ¶¶ 7-8; **Exhibit C**, at 82:8-84:21; **Exhibit F**. The concrete foundation consisted of a low concrete block wall[3] and a concrete pad that acted as the floor of the dugout. USA Memo of Law, at 3, ¶ 5; **Exhibit E**; **Exhibit F**. The front of the baseball dugouts was open and supported by three wooden columns resting on top of metal base plates, which in turn lay on top of the concrete pad. **Exhibit A**, at 73:12-74:11; **Exhibit B**, at 135:13-36:14; **Exhibit E**; **Exhibit F**. The horizontal base of each baseball dugout measured 40 feet by 8 feet. USA Memo of Law, at 3, ¶ 6; **Exhibit E**.

By comparison, the Chinook-47D helicopters that landed on Parsons Field on January 5, 2002 were twin-turbine, tandem-rotor helicopters "designed for transportation of cargo, troops and weapons during day, night, visual, and instrument conditions." **Exhibit G**, at Ch. 2, § 2-1-1;

---

[2] A full citation to the Exhibits contained herein are listed in the Affidavit of Alberto G. Rossi filed concurrently herewith.
[3] The height of the concrete block was two courses; in other words, two 8 x 16 x 8 concrete blocks stacked on top of each other. **Exhibit D**, at 132:24 - 133:19.

3

**Exhibit H**, at 21:5-18; **Exhibit I**.  The maximum gross weight of a Chinook-47D is 50,000 pounds.  **Exhibit G**, at Ch. 2, § 2-1-2.  The Chinook-47D helicopter that caused the first base dugout to blow over on top of the plaintiff-firemen weighed approximately 28,000 pounds.  **Exhibit J**, at 79:1-6; **Exhibit H**, at 65:21-22.  Measured from nose to tail, a Chinook-47D helicopter spans approximately fifty feet and nine inches.  **Exhibit G**, at Ch. 2, Fig. 2-1-1.  The width of a Chinook-47D helicopter, measuring the distance between the front landing gears, is approximately eleven feet and eleven inches.  **Exhibit G**, at Ch. 2, Fig. 2-1-1.  Each rotor blade is approximately twenty-seven feet and six inches long.  **Exhibit G**, at Ch. 2, Fig. 2-1-1.  In short, each of the Chinook-47D helicopters that landed on Parsons Field during the Presidential rehearsal landing was significantly larger than the wooden baseball dugouts.

      The USA itself was concerned about the effect of rotor wash on physical structures on Parsons Field.  For example, the pilots of the first[4] Chinook-47D helicopter that landed on Parsons Field on the night of the incident testified at deposition that rotor wash from a Chinook-47D helicopter is "quite powerful" and could blow over such things as "garbage cans, . . . bleachers, stacks of stuff, landfills, construction equipment," "GP medium" size military tents, as well as "an open shed-like structure facing towards where the helicopters were going to land."  **Exhibit J**, at 32:9-34:6, 76:24-77:12; **Exhibit H**, at 21:19-26:10.  The USA even admits in one of its answers to the plaintiffs' interrogatories, that on January 4, 2002, while inspecting Parsons Field, both Lt. Col. Clay Stackhouse and Chief Warrant Officer George Seagle, HMX-1 White House Liaison Officers, "expressed concerns regarding the impact of the rotorwash on the field, especially on the newly-installed astroturf covering the field."  **Exhibit K**, at 3.  Further, Lt. Col. Stackhouse "had expressed a preference for another potential landing site that was larger."  Id. at 4 (emphasis added).  Even Mr. Thomas J. Keady, the then-Vice-President of

---

[4] **Exhibit H**, at 14:5-18; **Exhibit J**, at 21:16-24.

Northeastern University, initially suggested to the USA "alternate sites including Logan Airport, the Esplanade and helicopter landing sites at local hospitals." **Exhibit L**, at 5-6.

In addition, Mr. Ernest Silva, a member of the White House Advance Team, specifically asked a representative of Northeastern University "whether the baseball dugouts would be affected by the rotorwash." **Exhibit K**, at 5. Mr. Silva was identified by the USA as someone who "had experienced the effects of rotor wash from large helicopters first hand . . . [h]aving attended several presidential landings." Id. at 5 (emphasis added). In fact, on the night of the incident, when Mr. Silva observed a group firefighters standing next to the first base dugout, he advised them "to move further back away from the field in order to avoid the rotorwash." Id. The USA can hardly deny now that it was concerned with the potential effect of rotor wash from a Chinook-47D helicopter on the wooden baseball dugouts on Parsons Field.

Indeed, in its answers to Ledgewood Construction Company, Inc.'s interrogatories, the USA stated that:

> In their statements to the Brookline Fire Department, the Plaintiffs assert that they were placed close to the landing site by their supervisors. If those assertions are true, then those supervisors ignored the obvious risks associated with normal helicopter operations, and the Town of Brookline may have been actively negligent and at least partially responsible for the damages claimed by the Plaintiffs in their Complaint.

**Exhibit M**, at 7 (emphasis added).

Chinook-47D helicopter pilots had specific orders to land near second base of the baseball field on Parsons Field. See **Exhibit N**.

      **B.**  **Disputed Material Facts Regarding the Dugout Construction**

The USA claims that there was a hidden construction defect in the first base dugout that made the dislodging of the dugouts by rotor wash unforeseeable. Again, the facts underlying this assertion are hotly disputed. For example, the USA relies heavily on the "fact" that Detective

5

Barry McNeilly of the Brookline Police Department stated in his Supplemental Report that the wedge anchors installed by Split Boulder were only embedded one and one-half inches into the concrete blocks supporting the dugouts and should have been embedded more deeply. During Detective McNeilly's deposition, however, he could not corroborate this supposed "fact." Compare **Exhibit O**, with **Exhibit P**, at 104:14-105:1-3 & 121:18-21. Detective McNeilly admitted that he did not measure the depth of the holes in the mortar of the concrete blocks during his investigation. **Exhibit P**, at 104:14-105:1-3. Further, Detective McNeilly could not discount the possibility that the wedge anchors sticking out the sill of the wooden structure were in their current position because they shifted back up into the structure itself. **Exhibit P,** at 121:18-21.

At least two deponents, Mr. Paul Scott Donahue and Mr. David Donahue, dispute the USA's claim that the wedge anchors were improperly secured. Mr. Paul Scott Donahue, the then-owner of Split Boulder, testified at his deposition that upon his personal inspection of the wedge anchors installed on the first base dugout, he determined that they were properly installed. **Exhibit A**, at 63:3-9. David Donahue, an employee of PEDA, Inc. at the time, also testified that the wedge anchors were installed correctly. **Exhibit B**, at 163:8-14. In view of the foregoing deposition testimony, it is evident that there is a genuine dispute of material fact as to whether the wedge anchors were improperly installed.

Even assuming *arguendo* that the wedge anchors were only embedded one and one-half inches into the concrete blocks, it does not necessarily follow, as the USA alleges, that the first base dugout was constructed defectively given the fact that it took rotor wash from a large military helicopter to dislodge the first base dugout from its foundation. Accordingly, whether the first base dugout was constructed defectively is a material fact in dispute.

### III. RULE 56.1 STATEMENT OF MATERIAL FACTS IN DISPUTE

1. Whether it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge a wooden baseball dugout from its foundation during a Presidential rehearsal landing on Northeastern University's Parsons Field resulting in injuries to bystanders; and

2. Whether the dislodged wooden baseball dugout was constructed defectively, as alleged by the USA in its motion.

Pursuant to Sasaki's Fed. R. Civ. P. 56(f) objection to the USA's Motion for Summary Judgment herein, Sasaki reserves its right to deny any and all of the facts contained in the USA's Rule 56.1 Statement of Undisputed Material Facts of Record with evidence discovered between the date of the filing of this Memorandum of Law and the close of discovery.

### IV. ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, admissions, depositions, affidavits and answers filed in the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ward v. City of Boston, 367 F.Supp.2d 7, 11-12 (D. Mass 2005) (quoting Fed. R. Civ. P. 56(c)). Accordingly, "the requirement is that the there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc. 477 U.S 242, 247-48 (1986) (emphasis in original). A "genuine" issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, . . . would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations and quotations omitted). A "material" fact is one that has the "potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations and

internal quotations omitted).  The applicable law in this matter is that of the Commonwealth of Massachusetts.  See USA Memo of Law, at 9.

In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994) (internal citations and quotations omitted).  Here, the evidence submitted by Sasaki in support of its Rule 56.1 Statement of Material Facts in Dispute, supra, does indeed require a choice between the parties' differing versions of the truth.  Accordingly, there are genuine issues of material fact in dispute which must be decided upon by the trier of fact at trial.  See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

### B.    Disputed Material Facts Preclude Summary Judgment for the USA

The USA's Motion for Summary Judgment must fail because there are at least two genuine issues of material fact:  (1) whether it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge a wooden baseball dugout from its foundation during a Presidential rehearsal landing on Northeastern University's Parsons Field resulting in injuries to bystanders; and (2) whether the dislodged wooden baseball dugout was constructed defectively, as alleged by the USA in its motion.  In the alternative, pursuant to Fed. R. Civ. P. 56(f), Sasaki objects to the USA's motion for summary judgment as premature given the ongoing fact discovery in this matter, and requests that the Court issue an Order continuing the deadline for filing an opposition to the USA's motion.

**1.    "Foreseeability" is a Material Fact in Dispute**

Under Massachusetts law, a plaintiff in a negligence action must show proximate or legal cause as a basic element of its *prima facie* case. Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). Proximate cause requires, among other things, a showing by the plaintiff that the loss was a "foreseeable" consequence of the defendant's negligence. Id. at 522-23. "Foreseeability means that which is objectively reasonable to expect, not merely what might conceivably occur." Id. at 521 (citations omitted). In other words, a "defendant is liable for the natural and probable consequences of his conduct." Id. at 523 (quoting Dziokonski v. Babineau, 375 Mass. 555 (1978)).

Further, "[p]roximate cause does not require the particular act to which caused the injury to have been foreseen, only that the general character and probability of the injury be foreseeable." Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass. App. Ct. 901, 902 (1987) (citing Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 454 (1969)). Ordinarily, except instances "where no rationale view of the evidence would warrant a finding of negligence," questions concerning what is or what is not foreseeable are left for the trier of fact to determine at trial. Jorgensen, 905 F.2d at 523 (quoting Glick, 25 Mass. App. Ct. at 902).

Given the facts cited above, a rational fact finder could easily determine that it was reasonable to expect rotor wash from a Chinook-47D helicopter landing on Northeastern University's Parsons Field to dislodge one of the wooden baseball dugouts from its foundation. In others words, it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge one of the wooden baseball dugouts on Parsons Field from its foundation during the Presidential rehearsal landing, even if the dugouts were properly installed.

A reasonable fact-finder need only compare the size, build, and weight of the baseball dugouts on Parsons Field to that of a Chinook-47D helicopter to fully appreciate the foreseeability of rotor wash from a Chinook-47D helicopter dislodging one of the wooden baseball dugouts from its foundation. Given the dimensions of a Chinook-47D helicopter, it is disingenuous for the USA in its motion to characterize the wooden baseball dugouts on Parsons Field as "large" wooden buildings,[5] when in fact each of the Chinook-47D helicopters that landed on Parsons Field during the Presidential rehearsal landing were larger than the wooden baseball dugouts. See Section II.A, supra. More importantly, it is evident from the foregoing that a reasonable fact-finder could find that it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge one of the wooden baseball dugouts from its foundation. Indeed, the only "unforeseeable" occurrence on January 5, 2002 was that a large military helicopter would land on Northeastern University's baseball field, which is located in a residential neighborhood. See, e.g., **Exhibit A**, at 93:8-14; **Exhibit Q**, at 28:1-15.

The cases cited by the USA are distinguishable from the present action; in fact, they tend to support a finding that injury or damage from the rotor wash was foreseeable. For example, in Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass. App. Ct. 901 (1987), the patrons of a restaurant sued the owners of a restaurant under a theory of negligence for injuries suffered as a result of an out-of-control motor vehicle which crashed through a solid exterior wall of the restaurant. Id. The restaurant was set back approximately sixty feet from the highway and was only reachable from the highway by way of a driveway across a ten foot strip of land owned by the Commonwealth of Massachusetts, and then by crossing a parking lot which had the capacity to hold approximately twenty vehicles. Id. In addition, the restaurant had cement bumper stops, approximately eight inches high and five feet long, placed around the perimeter of the building.

---

[5] USA memo of law, at. 8, 12

Id.  In the present case, there were no such obstacles or impediments to prevent the rotor wash from the Chinook-47D helicopters from striking the first base dugout on Parsons Field.  In addition, unlike the out-of-control motor vehicle in Glick, the Chinook-47D helicopter pilots had specific orders to land near second base of the baseball field on Parsons Field.  **Exhibit N**.

In Herbert v. Enos, 60 Mass. App. Ct. 817 (2004), the plaintiff agreed to water the defendant-homeowner's flowers while he was away on vacation.  Id. at 818.  While holding the defendant's garden hose in one hand, the plaintiff reached for the water faucet and, grabbing it, received an electric shock causing him to suffer severe injuries.  Id. at 818.  The defendant's expert opined that the incident was the result of an overflow of water from a toilet located on the second floor of the defendant-homeowner's house, which after several days caused the insulation on the electrical wiring in the house to break down "allowing leakage current to flow onto a grounded surface and thence through the water piping system."  Id. at 819.  Unlike the extraordinary and unusual series of events that occurred in Enos, the USA in the present case planned, prepared, and coordinated the landing of the Chinook-47Ds on Parsons Field on the night of the incident.  **Exhibit K**, at 2-4; **Exhibit H**, at 12:7-20:3; **Exhibit N**.

In Ted's Master Service, Inc. v. Farina Bros. Co., 343 Mass. 307 (1961), the defendant contractor was sued on a theory of negligence by the plaintiff building owners because of damage suffered by the building as a result of the pile driving activities of the contractor.  The evidence on the record showed that the contractor's pile driving activities occurred on the "opposite side of the street at some distance from the plaintiffs' buildings and never was carried on nearer than sixty or seventy feet from them."  Id. at 309.  In addition, the evidence at trial indicated that the contractor "had not included the plaintiffs' building in the survey conducted before the pile driving commenced and that it had made no ground borings or soil tests in the

area." Id. The plaintiffs, however, "made no attempt to show that there was a custom or general practice among those engaged in similar work to make borings, soil, tests, or preliminary surveys in order to determine the effect of pile driving upon structures as far removed from the point of operation as were the plaintiffs' buildings." Id. at 309-10. Here, unlike Ted's Master Service, the question of whether the USA breached the standard of care in its "preparation for the drill, approach, and landing" of the Chinook-47D helicopters will be very much in issue. See Docket No. 69, Plaintiffs Third Amended Complaint, ¶ 39. Unlike the contractor in Ted's Master Service, Inc., the USA performed a pre-landing site inspection to determine whether Parsons Field was suitable for the landing of Chinook-47D helicopters. See **Exhibit K**, at 2-5. Whether that site inspection was negligently performed is a question appropriately left for the jury to decide.

In view of the factual evidence cited herein and the case law on foreseeability, a rational fact-finder could easily find it was reasonably foreseeable that rotor wash from a Chinook-47D helicopter would dislodge one of the wooden baseball dugouts from its foundation during the Presidential rehearsal landing. Consequently, there exists a genuine issue of material fact as to foreseeability that precludes summary judgment in the USA's favor.

### 2. The Existence of a Construction Defect in the First Base Dugout is a Material Fact in Dispute

In an attempt to bolster its lack of foreseeability argument, the USA claims that there was a hidden construction defect in the first base dugout that was the true reason the dugout became dislodged during the landing. USA Memo of Law, at 12-14. As discussed above, however, there are genuine issues of material fact as to whether the dugout was constructed incorrectly and if the incorrect construction was the reason the dugouts were dislodged by the rotor wash. See Section II.B, supra. The rotor wash need not be the sole cause of the accident; it is enough for

12

the rotor wash to be a substantial contributing cause of the accident. E.g., Welch v. Keene Corp., 31 Mass. App. Ct. 157, 162 (1991) (explaining that a plaintiff in a negligence action need only show "that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm") (quoting Restatement (Second) of Torts § 433B(1) comment a (1965); O'Connor v. Raymark Indus., Inc., 401 Mass. 586, 589 (1988) ("It doesn't have to be the only cause, but it has to be a substantial contributing cause"); Frotton v. Masskey Development Corp., 2001 Mass. Super. LEXIS 573, at *5 (Oct. 2, 2004) ("Proof of causation requires only that a plaintiff prove that the negligent conduct was a substantial factor in bringing about his injury") (citing Murphy v. Town of Chatham, 41 Mass. App. Ct. 821, 824 (1991)). In view of the discrepancies in Detective McNeilly's testimony, and in view of the Donahues' testimony that the dugouts were properly constructed, there is absolutely no basis for summary judgment in favor of the USA. Moreover, the USA's argument begs the question of whether baseball dugouts on a field in a residential neighborhood are "defectively constructed" if they cannot withstand rotor wash from a Chinook 47-D helicopter. Certainly, a reasonable juror could conclude that a baseball dugout need not be constructed to that standard in order to be safe for its reasonably anticipated uses.

### C.  The USA's Motion for Summary Judgment is Premature[6]

As the foregoing discussion shows, there is ample basis for the court to deny the USA's motion for summary judgment on the merits. However, pursuant Fed. R. Civ. P. 56(f), Sasaki also objects to the USA's Motion for Summary Judgment as premature, given the fact that several key witnesses have yet to be deposed by no fault or delay of Sasaki. Delay in the completion of depositions in this case is largely due to the USA itself. For example, on or about

---

[6] In an attempt to avoid needless repetition in each Rule 56(f) objection before this Court, Sasaki respectfully refers the Court to Plaintiffs' Rule 56(f) Motion for the elements a party proffering a Rule 56(f) objection must satisfy. See Docket No. 101, at 3.

13

October 3, 2006, Sasaki noticed the 30(b)(6) deposition of the USA for October 24, 2006. **Exhibit R**. A re-notice of that deposition was issued by counsel for Sasaki on or about October 17, 2006 in order to limit the scope of topic number 6 in the original notice as well as to change the date from October 24 to October, 25, 2006 to accommodate the USA. **Exhibit S**; **Exhibit T**, at 10:15-11:5. The USA designated Agent Kenneth Jenkins of the United Secret Service for a limited number of the topics listed in Sasaki's 30(b)(6) re-notice. **Exhibit T**, at 10:7-11:10. During Agent Jenkins' deposition, counsel for the USA stated that he would produce a member, or several members, of HMX-1 to provide testimony regarding topics number 1 and 7 of Sasaki's 30(b)(6) renotice. Id. at 127:13-128:5. Topics number 1 and 7 respectively request testimony on "all aspects involving the decision-making process regarding the choice of Northeastern University's Parsons Field as the landing site for the President of the United States" and "the suitability of the field as a potential landing site, any alternative sites proposed and the extent to which any inspection included the dugouts." **Exhibit S.**

On or about November 9, 2006, counsel for the USA indicated he would produce Lt. Col. Clay Stackhouse to testify from the perspective of HMX-1 in response to Sasaki's 30(b)(6) renotice. **Exhibit U**. In addition, in its answers to Sasaki's first set of interrogatories, the USA identified Lt. Col. Stackhouse as the HMX-1 White House Liaison Officer who would have made the determination, if any was made, regarding the affect of rotor wash on the physical integrity of the baseball dugouts located on Parsons Field. **Exhibit V**, at 10-11. On or about December 14, 2006, Northeastern University also served notice of a 30(b)(6) deposition upon the USA listing, among other topics of testimony, the "operational characteristics of Chinook-47D helicopters," the "characteristics and force(s) of down wash, rotor down wash, and wind velocities," and the "manner in which to calculate the force(s) and velocity(ies) of the

downdrafts, rotor down wash and winds created by . . . Chinook-47D helicopters of the type that landed and/or attempt to land at Parsons Field on January 5, 2002." Docket No. 105, Exhibit A. To date, no witness has been produced pursuant to Northeastern University's 30(b)(6) notice. See Docket No. 105, Affidavit of Gerald F. Lucey, ¶ 5.

In light of the aforementioned deposition notices, all of which were noticed well before the USA's Motion for Summary Judgment, it is difficult not to question the purpose of the USA's premature motion. See Fed. R. Civ. P. 11(b)(1) ("By presenting to the court . . . a written motion . . ., an attorney is certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . it is not being presented for any improper purposes, such as to . . . cause unnecessary delay or needless increase in the cost of litigation") (emphasis added). The Court need only look to the docket to view the delay and cost associated with the USA's premature motion. Docket Nos.100-102 & 104-106.

In further support of Sasaki's Rule 56(f) objection, Sasaki incorporates and relies upon the arguments raised by Northeastern University, the Plaintiffs, and Ledgewood Construction Company, Inc. in their respective Rule 56(f) motions. Docket Nos. 100-102 & 104-105. Should the Court decide to grant Sasaki's Rule 56(f) objection to the USA's motion for summary judgment, instead of summarily denying the USA's motion at this time, and continue the deadline for filing an opposition thereto, Sasaki respectfully requests that it be allowed to modify and/or supplement the arguments raised herein at the conclusion of discovery.

V.   **CONCLUSION**

Viewing the evidence submitted herein in the light most favorable to Sasaki, Sasaki respectfully requests that this Honorable Court deny the USA's motion for summary judgment because there are genuine issues of material fact in dispute. In the alternative, pursuant to Fed.

R. Civ. P. 56(f), Sasaki objects to the USA's motion for summary judgment as premature given the ongoing fact discovery in this matter.  Should the Court decide to grant Sasaki's Rule 56(f) objection herein, instead of denying the USA's motion at this time, Sasaki respectfully requests that it be allowed to supplement and/or modify the arguments raised in this Memorandum of Law at the close of discovery.

**WHEREFORE**, Sasaki respectfully requests that this Honorable Court DENY the USA's motion for summary judgment because there are genuine issues of material fact in dispute or, in the alternative, pursuant to Fed. R. Civ. P. 56(f), continue the deadline for filing an opposition to the USA's motion for summary judgment, and allow Sasaki to supplement and/or modify the arguments raised in this Memorandum of Law at the conclusion of discovery.

|  | Third-Party Defendant,<br>SASAKI ASSOCIATES, INC.<br>By its attorneys,<br><br>/s/  Deborah S. Russo<br>David J. Hatem, PC, BBO #225700<br>Deborah S. Russo, BBO #434610<br>Alberto G. Rossi, BB0 #657246<br>DONOVAN HATEM LLP<br>Two Seaport Lane<br>Boston, MA  02210<br>(617) 406-4500 |
|---|---|

Date:  February 14,  2007

01068282

# CERTIFICATE OF SERVICE

I, Alberto G. Rossi, hereby certify that on this 14th day of February, 2007, I served a copy of *Sasaki Associates, Inc.'s Memorandum of Law In Opposition to the USA's Motion for Summary Judgment* via the CM/ECF system of the U.S. District Court for the District of Massachusetts and by first-class mail, postage prepaid, to the following:

| | |
|---|---|
| John H. Bruno II, Esq.<br>Masi & Bruno<br>124 Long Pond Road<br>Unit 11<br>Plymouth, MA 02360 | Joslin Murphy, Esq.<br>Associate Town Counsel<br>Town of Brookline<br>333 Washington Street<br>Brookline, MA 02445 |
| Michael E. Mone, Esq.<br>Rhonda T. Maloney, Esq.<br>Esdaile, Barrett & Esdaile<br>75 Federal Street<br>Boston, MA 02110 | Christopher Maffucci, Esq.<br>Casner & Edwards, LLP<br>303 Congress Street<br>Boston, MA 02210 |
| Jeffrey A. Gorlick, Esq.<br>One Longfellow Place, Suite 3409<br>Boston, MA 02114 | Warren D. Hutchison, Esq.<br>Brian Newberry, Esq.<br>Donovan Hatem LLP<br>Two Seaport Lane<br>Boston, MA 02210 |
| Gerald F. Lucey, Esq.<br>Nelson, Kinder, Mosseau & Saturley, P.C.<br>45 Milk Street<br>Boston, MA 02109 | |
| Matthew A. Connelly, Esq.<br>Torts Branch, Civil Division<br>U.S. Dept. of Justice,<br>P.O. Box 14271<br>Washington, DC 20044 | |

/s/ Alberto G. Rossi
Alberto G. Rossi

01068282