UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **FREDERICK BABCOCK, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No.  1:04-CV-11413-EFH |
| | ) | |
| v. | ) | consolidated with |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | 1:04-CV-12003-EFH |
| **et al;** | ) | 1:04-CV-12647-EFH |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES OF AMERICA'S
CONSOLIDATED MEMORANDUM IN OPPOSITION TO
THE MOTIONS FOR EXTENSION OF TIME FILED BY
THE PLAINTIFFS AND CROSS-CLAIMANTS LEDGEWOOD,
NORTHEASTERN AND SASAKI**

The United States of America opposes the Motions for Extension of Time filed by the Plaintiffs and Cross-claimants Ledgewood Construction, Co., Northeastern University and Sasaki Associates Inc., (Dkt. Nos. 100, 102, 105, and 108) because these Motions do not satisfy the requirements of Fed. R. Civ. P. 56(f).  The Motions seek to delay resolution of the United States' Motion for Summary Judgment until after further discovery.  Nevertheless, the Motions do not identify what facts will be sought during this discovery, nor do they explain how these facts will be relevant to the issues raised in the Motion for Summary Judgment.  Because they fail to meet these basic requirements, the Motions for Extension of Time must be denied.

## ARGUMENT

A party seeking to postpone resolution of a motion for summary judgment under Fed. R. Civ. P. 56(f) must "set forth a plausible basis for believing that specified facts . . . probably exist" and must "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *C.B. Trucking, Inc. v. Wastemanagement, Inc.*, 137 F.3d 41, 44 (1st Cir. 1998) (quotations omitted). A party must allege how the facts sought "to be obtained through discovery are relevant to a genuine material issue in the litigation." *Calvary Holdings, Inc. v. Chandler*, 948 F.2d 59, 65 (1st Cir. 1991). "[S]peculative assertions that the [party seeking summary judgment] has unspecified facts in its possession necessary for the [non-movant] to develop its legal theories coupled with conclusory statements that discovery should be commenced" are entirely inadequate to support a continuance under Rule 56(f). *C.B. Trucking*, 137 F.3d at 45. A court is free to grant a motion for summary judgment despite an opposing party's plea for additional discovery "where the opposing party has not alleged specific facts that could be developed through such discovery." *Bank One Texas, N.A. v. A.J. Warehouse, Inc.*, 968 F.2d 94, 100 (1st Cir. 1992) (quotations omitted).

Here, none of the parties seeking a continuance has identified what specific facts will be sought through further discovery. Nor has any party explained how the discovery of any such facts will influence the outcome of the Government's pending Motion for Summary Judgment. Accordingly, the various motions for an extension of time should be denied.

The United States' Motion for Summary Judgment is extremely narrow in scope. The Motion rests on the simple assertion that, based on the facts and circumstances of this case, the federal employees involved in the rehearsal on January 5, 2002, could not have reasonably foreseen that the rotorwash from a helicopter would blow over the superstructure of the first base dugout. (Dkt. No. 96.) In support of its Motion, the United States points out that the Parsons Field dugouts were large, sturdy wooden buildings attached to concrete foundations. (Dkt. No. 96, pp. 11-12.) The United States further notes that any defect in the construction of the first base dugout was hidden within the walls of that structure and not visible to any of its employees. (Dkt. No. 96, pp. 13-14.) Finally, the United States notes that no other portion of the Parsons Field complex was damaged during the rehearsal. (Dkt. No. 96, p. 12.) Even the similarly-constructed third base dugout, which was located much closer to the helicopter's landing point than the first base dugout, suffered no ill effect from the rotorwash. (*Id.*)

The Plaintiffs[1] do not explain how the discovery they seek will elicit facts to dispute any of these assertions. Instead, the Plaintiffs assert that resolution of the Motion for Summary Judgment must be postponed because "discovering the knowledge of those responsible for the planning and execution of the event is one of the most important facets of any trial preparation." (Dkt. No. 100, pp. 4-5.) The Plaintiffs do not indicate what

---

[1] Cross-claimants Ledgewood, Northeastern and Sasaki all rely on the Plaintiffs' Motion to support their own. Therefore, the U.S. will address the Plaintiff's Motion first.

specific knowledge those individuals might have nor do they explain how that knowledge would affect the outcome of the United States' Motion for Summary Judgment.  At most, the Plaintiffs appear to assert that there are six depositions that still need to be taken and that some of these witnesses may have some information on either rotorwash or the dugout.[2]  This type of speculative assertion is not sufficient to satisfy the requirements of Rule 56(f).  *C.B. Trucking*, 137 F.3d at 45.

     The Plaintiffs seek to postpone consideration of the Government's Motion until after the depositions of Kim Kimball, Ernest Silva, Chief Warrant Officer (CWO5) George Seagle, Thomas Keady, Kerry O'Grady and Lt. Col. Clay Stackhouse.  None of these witnesses has, or could have, information that would affect the outcome of the Government's Motion.  Although each of these witnesses visited Parsons Field before the rehearsal, the Plaintiffs have not suggested any reason why the field would have been perceived differently by these witnesses than it had been by any other witness who has already been deposed.  The dugouts would have still appeared to be large, sturdy structures, apparently firmly attached to concrete foundations.  Any defect in the construction of the dugout would have been just as imperceptible for these witnesses as it was for Northeastern's Facilities Manager, Jack Malone.  (*See* Attachment N to the United States of America's Motion for Summary Judgment, Dkt. No. 95, p. 49.)  In fact,

---

     [2]    It should be noted that the United States does not seek to prevent these depositions.  Indeed, most of them are scheduled to take place in the next four weeks.  The United States simply asserts that there is no reason to delay consideration of its Motion for Summary Judgment solely because discovery is ongoing.

the defect in the dugout, the improperly installed wedge anchors, was hidden inside the walls of the structure.  (*See* Dkt. No. 96, pp. 13-14.)

Furthermore, there is no basis to assume that any of these witnesses was informed of any defect in the dugout's construction.  Mr. Malone did not know how the dugouts were attached to their foundations, so he could not have informed these witnesses of that fact.  (Attachment A, Deposition of John Malone, Vol. I, p. 95:12-20.)   Apparently, the only persons knowledgeable about the dugouts' construction were the individuals who moved and reattached them.  The Plaintiffs have not asserted that these witnesses had any communication with Ledgewood, PEDA, or Split Boulder prior to the accident.  Without some information suggesting some deficiency in the construction of the first base dugout, none of these witnesses could have predicted that the dugout would be knocked over by the rotorwash of the CH-47.

The bare fact that some of these witnesses demonstrated an understanding that helicopters generate rotorwash is also insufficient to affect the outcome of the United States' Motion.  CWO5 Seagle secured some lighter weight objects in the landing zone. (Attachment B, Defendant United States of America's Answers and Objections to Plaintiffs' Interrogatories to be Answered by the United States of America, p. 12.) Lt. Col. Stackhouse raised the possibility that rotorwash might adversely affect the artificial turf, not the dugouts, and Jack Malone told him not worry.  (Attachment B, pp. 3-4, Attachment A, pp. 125:16-128:15.)  Secret Service Agent Kerry O'Grady and Mr. Silva warned some bystanders, and some firefighters, that rotorwash might adversely

affect them. (Attachment B, pp. 11-13.) Only one of these witnesses, White House Advance office volunteer Ernest Silva, raised the issue of how rotorwash would affect the dugouts. In response to his questions during the walk-through, however, Mr. Silva was told that the dugouts were firmly bolted down and could withstand a hurricane. (Attachment B, p. 5.) None of these pre-accident conversations or actions would have suggested that the first base dugout might be blown over. That outcome was simply not foreseeable.

Northeastern and Sasaki also seek to delay consideration of the Motion for Summary Judgment until one other deposition is taken. Northeastern seeks a 30(b)(6) witness to address the operational characteristics of the CH-47 as well as the rotorwash generated by that aircraft. That deposition would add nothing to the determination of the Government's Motion. The parties have already deposed the two pilots who landed the CH-47 at Parsons Field. While these individuals might not have been able to describe the relative strength of the helicopter's rotorwash with engineering precision, these highly experienced pilots were well qualified to describe what their helicopter and its rotorwash could and could not do. No additional discovery will alter those facts.

## CONCLUSION

The Plaintiffs and the Cross-claimants have failed to identify what specific facts they will seek in discovery. They have also failed to explain how any such facts would alter the outcome of the United States' Motion for Summary Judgment. Consequently, they have not met the requirements of Rule 56(f) and their requests to postpone consideration of the United States' Motion for Summary Judgment should be denied.

Dated: February 21, 2007

                        Respectfully submitted,

                        PETER D. KEISLER
                        Assistant Attorney General

                        MICHAEL J. SULLIVAN
                        United States Attorney

                        BARBARA HEALY SMITH
                        Assistant United States Attorney


                         /s/ Matthew A. Connelly
                        MATTHEW A. CONNELLY
                        ASHLEY E. DEMPSEY
                        Trial Attorneys
                        Torts Branch, Civil Division
                        U.S. Department of Justice
                        P.O. Box 14271
                        Washington, DC  20044-4271
                        (202) 616-4040 (Connelly)
                        (202) 616-4024 (Dempsey)
                        (202) 616-4159 (fax)

                        Attorneys for the
                        United States of America

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing document were placed in the U.S. mail, this day 21st of February 2007, addressed to the following counsel of record:

| | |
|---|---|
| Michael E. Mone, Esq.<br>Esdaile, Barrett & Esdaile<br>75 Federal Street<br>Boston, MA  02110 | John H. Bruno, Esq.<br>Masi & Bruno<br>124 Long Pond Road, Unit 11<br>Plymouth, MA  02360 |
| Joslin Murphy, Esq.<br>Associate Town Counsel<br>333 Washington Street<br>Brookline, MA  02445-6863 | Gerald F. Lucey, Esq.<br>Nelson, Kinder, Mosseau & Saturley, PC<br>45 Milk Street, 5th Floor<br>Boston, MA  02109 |
| David J. Hatem, Esq.<br>Deborah S. Russo, Esq.<br>Donovan Hatem LLP<br>Two Seaport Lane<br>Boston, MA  02210 | Terrence J. Hamilton, Esq.<br>Christopher Maffucci, Esq.<br>Casner & Edwards, LLP<br>303 Congress Street<br>Boston, MA  02210 |
| Jeffrey A. Gorlick, Esq.<br>Law Offices of Jeffrey A. Gorlick<br>One Longfellow Place, Suite 3409<br>Boston, MA  02114 | Brian C. Newberry, Esq.<br>Donovan Hatem LLP<br>Two Seaport Lane<br>Boston, MA  02210 |

 /s/ Matthew A. Connelly
MATTHEW A. CONNELLY